**CITY OF LAKE OZARK, Missouri, Appellant,**

v.

**Walter L. PREWITT, et al., Respondents.**

**No. WD 32251.**

Missouri Court of Appeals, Western District.

March 16, 1982.

H. Ralph Gaw, Tipton, for appellant; Crews & Gaw, Tipton, of counsel.

David T. Welch and Charles E. McElyea, Camdenton, for respondent; Phillips, McElyea, Walker & Carpenter, Camdenton, of counsel.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

Lake Ozark sought to annex approximately 1,709 acres of land to its present corporate limits of 2,000 acres. The area sought to be annexed is a strip about one mile wide extending from the Osage River on its north, down to and including part of Section 5, Township 39, Range 15, lying to the east of Highway 42, but excluding an irregular tract thereof which is a part of Osage Beach, Missouri. The strip generally lies to the east of Lake Ozark's present city limits.

Proceeding under the former Sawyer's Act as it existed prior to amendment effective May 13, 1980, Lake Ozark passed a resolution on June 7, 1978, for the annexation and authorized the filing of the petition for declaratory judgment. The resolution recited that Lake Ozark deemed the annexation to be a reasonable and necessary course of action for its proper development and that the city could furnish normal municipal services to the proposed annexed area within a reasonable time.

The trial court denied the declaratory judgment and among other things found that the former Sawyer's Act, § 71.015, RSMo 1969, was unconstitutional as a denial of due process because it denied the citizens of the area proposed to be annexed a vote on their desires to be annexed. However, in *City of Branson v. Biedenstein*, 618 S.W.2d 665, 670 (Mo. banc 1981), the court followed the rationale of *City of Kirkwood v. Allen*, 399 S.W.2d 30 (Mo. banc 1966) [which dealt with an amendment to § 71.015, requiring a vote in both the city and in the area to be annexed in First Class Charter counties before declaratory judgment suit is filed, the court holding that the amendment was procedural and applied to the previously filed annexation suit]. The *City of Branson* case held also that the amendments to § 71.015, effective May 13, 1980, were also procedural, and that the dual election procedure of subsection (6) should apply to a pending annexation. Thus, there is no viable constitutional due process issue here, and the trial court was in technical error in declaring former § 71.015 unconstitutional because of the Branson case, and there is no need further to consider the matter.

City Clerk Jacqueline Brown testified that there were 154 licensed businesses in Lake Ozark in 1976, and 181 in 1979, an increase of 27. The assessed valuation was 15¢ per $100 assessed valuation for the last two years, and the highest landowner, noncommercial tax payment to the city was between $50 and $60. The highest commercial tax was about $450. The city's primary revenue source was from sales tax. The only business in the area proposed to be annexed was the Atkinson Pump, on D Road. $143,000 sales tax was collected in 1979, compared with $135,000 in 1978. Lake Ozark's population was 693, an increase of 30 persons in the last 3 years, it had 13 or 14 employees, and $256,000 in the bank in all accounts and CD's. The new businesses (27) going in who acquired merchants' licenses were along Business Highway 54, the "strip area".

Chief of Police Max Schutz testified that there were four full-time officers and five part-time officers on the force, and four automobiles. There existed a court system with a municipal judge and bailiff personnel. Schutz was familiar with the proposed annexation area, its terrain and roads, and it was his feeling, his opinion, that Lake Ozark's police force could provide police service for the area within a reasonable time— he could have routine patrol therein immediately after he was told to do it. There are small groups of population in some of the area, and in other places it is sparsely populated. There was one subdivision, that of Bill Campbell, who built the secondary road through it. On cross-examination, Schutz testified that he was giving 24 hour police protection to Lake Ozark, had his own dispatching system with an additional four employees as dispatchers. In the summertime, there are two men and two cars on duty, with reserves on duty weekends. There was no development in the northern part of the area which was mostly wooded land with "hills and hollers". In Lake Ozark, both commercial and residential sites were "starting to get slim". The city has only one industry, the Stanton Novelty, and Mayor Denny testified that another, J. B. Deere Cedarcraft, Inc., had recently moved from the city.

Bill Campbell owned 500 acres in the area along D Road. He had no objection to the annexation and thought the benefits would be police protection, city street maintenance and lighting, and a sewer before long. On his land, 30 or 40 lots were platted, seven of which were sold, and some housing (two) was going in. There was no water in the

area, and the two houses that had gone in were drilling their own wells. His land was worth more as development property, nothing very good for farming.

Dr. Hensley, Superintendent of Schools for three years, testified that the district owned 113 acres in the area sought to be annexed, which was purchased by a vote of the people in 1978 for a proposed new senior high school district. Four elections to pass a bond issue to build a building have failed of passage. In the 113 acres, it would be advantageous for the district to have the present Lake Ozark police protection, and water and sewer services in the future, and the city has provided snow removal and street repair services to the present school within the city limits. If there were another election and a senior high school building started, the school's plan was to drill a well and put in a lagoon.

City Engineer, Ralph Wenneker, also street commissioner, for Lake Ozark, testified that the street department had three full-time employees, snow removal equipment, tractors, sweepers and backhoes, and a light grader. D Road is a major road into the area, and his crew would be able within a reasonable time to provide street services to the area proposed to be annexed, because "there's not that much more of it", but the story might change if more streets were built there. The water district was initiated by Lake Ozark, and it serves the Village of Lakeside (to the north), and down Highway 54 to Highway 42. The city has not been able to find a park area within its limits, the price of land therein being so high that it was not available for development.

Lake Ozark's mayor, Ray Denny, held that office for 10 years. The proposed annexation area, abutting the city limits, is the only place available for the city to expand. The gravel road through the Campbell area was maintained by the county. The city presently furnishes police protection, lights, street cleaning and maintenance. It has been unable to afford purchase of land within the city for a park project, and the annexation area would give

the opportunity to expand that kind of service to the population. A sewer project was presently on the drawing board, the first phase being completed, which consists of preliminary maps thereof and costs, done by Kreibel, Moore and Chrisenberger, of Springfield. The treatment plant would be located down on the river in the area of the Campbell property, chosen because of its topography and the fact that they did not want the excess to run into the lake but in the river. As far as natural drainage was concerned, that would be the best place for it to go. Assuming that the city would be successful in getting a bond issue and government financing, it would be Mayor Denny's recommendation and plan that the sewer system be available to all people within the city. There is not too much tax base on the property within the area proposed to be annexed, the basic income of the city being from sales tax. If there were development in the area, the city would provide street lighting. The water district is in the city, not a city project, because two towns went together, and it went outside the city limits. Apparently, more money was available to the city for building, and the water service would be provided in time to the proposed annexation area. There are not too many available building sites in Lake Ozark because two people own a lot of it and they will not sell for either residential or business purposes. On the strip, there is one commercial site area not yet levelled, one where a shopping center is to be built, and one by Holiday Inn which nobody can buy. The mayor felt that the development would increase population because more retired people are coming to the area, and if sewers and water are provided, it will grow—"there's more land out there than there are anywhere else. All our land up in town is gullys and people's not going to build in them gullys." The area out there is more suitable for residential purposes.

For respondents, Carl D. Williams testified that he, his two brothers and a sister own 186 acres in the north part of the area proposed to be annexed, the northeast corner of which touches on the Osage River.

Most of the 186 acres is very rough hills, rocks, lots of trees, and 40 to 50 acres in cultivation next to the river. The property was used strictly for recreation, and one brother ran cattle on it. It is reached from D Road thence over a very steep rock road across an easement on the Atkinson property, and it is about 4 miles from the junction of Highways 54 and 42. The secondary road through Campbell's property does not touch the Williams' property. The city's property is not as rough and hilly as that they own. [Apparently, although it is not clear from the testimony of witnesses, the road to the Campbell property starts south of the Osage River bridge on U.S. Highway 54, thence runs easterly, thence southeasterly. The Campbell development lies to the south and west of the Williams property— about a half mile or a mile away. The topography is about the same.] Mr. Williams' basic objection to the annexation was that he wanted to preserve his property for recreational purposes, and he could not understand why the city wanted the property down that far (north).

Lola Franklin testified she owned 8 acres along D Road just outside the Osage Beach city limits, for residential purposes—her home and a temporary structure for her mother's use. She had her well and septic tank system, and fire protection by permit from Osage Beach. There were no street lights in her area, police protection would be from Miller County, but it had not been needed. She could not see any feasible way that Lake Ozark could furnish them any services that would be better than they already had.

Bert Ransdall owned · 125 acres in the proposed area of annexation which is located northwest of D Road. He had a building contractor business in Osage Beach. Part of his property, about 32 acres, had been platted into 5 acre lots, with six homes being built, three still for sale. The secondary road on the Campbell property also runs for one-half mile through Ransdall's property. His primary reason for not wanting to be in the city is to escape regulations, and no services that it has would benefit his property.

John Zawislak had property next to Ransdall. He is a real estate broker with an office in Osage Beach. The lay of the property in Lake Ozark consists of ridges, hills and valleys, not differing from the north part of the area proposed for annexation. Residential buildings have been constructed on the ridges, and 200 acres, being closely held and never offered for sale, are similar to that in the proposed annexation area. In his opinion, no services provided for Lake Ozark citizens would benefit his property. The ridges in the proposed area would be suitable for development, and it is not an unusual situation to have to take that big of an area (1,709 acres) to get something which could be developed, and it would be an advantage to the city to annex it for future development and for water and sewer areas.

Gene Wadkins lived on 10 acres in the extreme southeast portion of the proposed annexation area on a curve on Highway 42. He had a small service station, grocery store, and liquor store, and lived in a double-wide trailer in the back. He moved there two years prior to get out of the city, and thought that the sales tax of the city would make extra book-work and expense, and any tax would affect his business. Police protection came from Miller County, and he had his own well and sewer system.

James L. Patton had a home near the Ransdall property on almost 18 acres, on which there is a well and septic tank. No present services of the city would benefit his property, and his property is not available for development.

Ed Jordan owned Arrowhead Lodge, and resided in Lake Ozark. He testified that there were no street lights in front of the Lodge, the closest being about a mile down the highway. He had seen the street sweeper once a year. He had 10 acres undeveloped north of the Lodge, and the Catholic Church property is up for development. His home is on a community well, and he has his own septic tank, and the Lodge has its own well and septic system. He acknowledged that he did not know who

owned vacant property in the city or whether it was for sale.

Lee Mace ran the Ozark Opry in Osage Beach. His wife is one of the owners of the Williams property, 186 acres on the northern part of the proposed annexation area, with which he was familiar. The areas within the city are roughly the same as in the annexation area. He thought two-thirds of the city's area has access, and there was "lots of land" undeveloped, but it did not have roads to it. The river, if it got up 25 feet, would flood the secondary road three feet. He would not like to see his wife's property in the city limits because of its recreational use and access to the river, and no city services provided would benefit it.

The trial court further found that there should be some *minimum* " 'normal municipal services' " that a city should be required to provide to its citizens and to make those services available (to the proposed area of annexation), and that the minimum services should include water, light, police protection, and a sewage system. In this conclusion, the trial court was in error. The evidence was that Lake Ozark did not, at the time of trial, have a sewage system within its limits. That was only in a Phase I planning stage, and according to the record, because of the nebulous possibility of passing a bond issue and the presently well-known decreasing availability of federal funding, it would be sheer speculation to entertain an idea that a sewage system (although a salutary project) would be soon installed throughout the city. The evidence is clear that water supplies come from a rural water district, serving two cities and outlying areas. The evidence also shows that electricity is furnished by the Union Electric Company from its Bagnall Dam hydroelectric plant. Thus, the only services which the evidence shows that the city presently provides its citizens are 24 hour police protection, street cleaning, snow removal and street repair services, street lighting, an emergency "911" system, and a municipal court system. The evidence is uncontradicted that these services would be available to the area to be annexed within a

reasonable time. On this state of the record, *City of Butler v. Kuecker,* 559 S.W.2d 575, 580[9] (Mo.App.1977), controls, where it is said, "The City is not required to show some theoretically desirable level of city services to be furnished, but rather all that it must prove is that it will be in a position within a reasonable time to furnish to the annexed area the same level of municipal services which it is currently furnishing to its existing populace. (Citing cases)." Lake Ozark here has shown that it can and will furnish its *presently* existing city services, although few there are, to the area proposed to be annexed within a reasonable time.

■ The dispositive question is, however, whether the evidence is sufficient to show that the area proposed to be annexed is reasonable and necessary to a proper development of Lake Ozark, and it is obvious from all of the evidence that the city hangs its hat on its claimed need for more area to be used for residential, commercial and industrial development. The evidence is clear that the major industry or commerce is tourism, and that is rather confined to the "strip" along business Highway 54. There is no evidence at all that there is a demand for industrial tracts within the city, and there exists no plan to attract that kind of enterprise to the city. Only one industry, Atkinson Pump, is located in the area to be annexed, and there is no evidence that industries or other commercial ventures are spilling over from the city into that area by reason of being unable to acquire suitable tracts of land within the city. Of the 27 new merchants' licenses, there was no evidence that they were unable to find sites within the city.

Nor is there substantial evidence of any "spillover" from the city into the proposed annexation area for residential purposes. The population of Lake Ozark had increased by about 30 persons in three years, there was no evidence that they were unable, or even had difficulty, in finding homes within the city limits. On Bill Campbell's 500 acres along D Road, 30 or 40 lots had been

platted, seven being sold, but only two houses were going in. His further testimony was that the development had been progressing for six years, during which the seven lots were sold. This hardly shows a pressing demand for building sites. Ransdall's property was comparable—he had built 5 of the 6 residences on his 125 acres, but only three had been sold at the time of trial.

Mention is made of the lack of an area within the city limits for park purposes. There was no showing of a demand for a park, or a need therefor, any plan therefor, or that the area to be annexed would be benefitted thereby. Note § 90.010, RSMo 1978, authorizing the establishment of parks within a city or within one mile therefrom, by gift, purchase or condemnation, and §§ 90.500, 90.550, setting up the petition procedures and organizational powers with respect thereto.

The case of *City of Perryville v. Brewer*, 557 S.W.2d 457, 462 (Mo.App.1977), sets forth standards which may be weighed and considered by a court before arriving at a decision as to reasonableness and necessity of a proposed annexation. Of the many standards there listed, although not exclusive, Lake Ozark has failed to show these: (1) a need for residential or industrial sites within the proposed area; (2) that it is unable to meet its needs without expansion; (4) past growth within the city has been minimal, and (5) the growth caused a spill-over into the proposed area; (8) the need of inhabitants of the proposed area for extended police protection [there was testimony that the area received protection from Miller County's sheriff's office, and there was no showing that it was inadequate]; and (11) there was no showing of enhancement of values of property in the proposed area which would flow from its annexation. The annexation was approved in the Brewer case, but contrast the evidence there adduced with the dearth of evidence here on the subjects of growth in the city and the surrounding area; land areas and their use; extension (and need for) police services; street planning—especially in the to-be-annexed area; recreation; ability to pay for extension of services; and increase in value of surrounding land.

The standard of review here is set forth in *Binger v. City of Independence*, 588 S.W.2d 481, 486[5, 6] (Mo. banc. 1979), as being whether the record shows substantial evidence to support the legislative decision, and if it is determined that there is no substantial evidence to show that the annexation was reasonable and necessary, then it must be set aside. In the there quoted case (page 485), of *City of Olivette v. Graeler*, 369 S.W.2d 85, 96 (Mo.1963), it is said, "The so-called 'debatable' rule merely means that if there is substantial evidence both ways, then the legislative conclusion is determinative." Here, there exists no substantial evidence that the annexation was reasonable and necessary, so it must be held that the issue is not "fairly debatable", and the annexation must be denied.

In oral argument, and somewhat in appellant's brief, the claim was made that Lake Ozark would need the proposed area for a new sewer system, which was only in a Phase I stage. Neither the city nor the proposed annexation area have a modern sewer system, but both rely upon septic tank systems. At this point, it is entirely speculative whether an effective sewer system plan may be planned, its costs, and whether there will be funds available from the federal and state governments or from a bond issue passage. Thus, that issue may not be considered as a factor.

The judgment is affirmed.

All concur.