**STATE of Missouri, ex inf., Larry D. NESSLAGE, et al., Relators,**

v.

**CITY OF LAKE ST. LOUIS, Respondent.**

No. 50608.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 21, 1986.

Norman C. Steimel, St. Charles, for respondent.

Louis S. Czech, Clayton, for relators.

Larry D. Nesslage, St. Charles Co. Pros. Atty., St. Charles, pro se.

CARL R. GAERTNER, Presiding Judge.

The City of Lake Saint Louis appeals a judgment ousting it of jurisdiction over Henke Road and finding that the Town of Dardenne Prairie had properly annexed the same. We reverse and remand with directions.

This case was tried without a jury, and must be reversed if it is not supported by substantial evidence, is against the weight of the evidence or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The cause

was determined on stipulated facts, a recital of which follows.

Proceeding under § 71.015, RSMo.Cum. Supp.1984, Lake Saint Louis passed a resolution on May 5, 1982, proposing the involuntary annexation of parts of Henke Road, and on December 20, 1983, the City obtained a declaratory judgment in the Circuit Court of St. Charles County authorizing the annexation. An election was held on April 3, 1984, in which 699 registered voters of the City of Lake St. Louis voted in favor and 75 voted against the annexation. On June 5, 1984, the City conducted a second election at which 328 voters favored and 169 opposed the annexation, four votes short of a two-thirds majority. In both elections no votes were cast in the area to be annexed as it is uninhabited. The City declared its annexation of the area to have been effective after the election of April 3, 1984.

· Meanwhile, Dardenne Prairie sought to voluntarily annex areas including the same portions of Henke Road under § 71.012, RSMo.Cum.Supp.1984, through two ordinances to that effect.

Shortly after the second election in Lake Saint Louis, Dardenne Prairie filed a petition in Quo Warranto seeking to both oust Lake Saint Louis from jurisdiction over Henke Road and to have Lake Saint Louis' attempted annexation of that property declared invalid. Lake Saint Louis filed a separate petition in Quo Warranto seeking to oust Dardenne Prairie from Henke Road and asking the court to order Dardenne Prairie to show the basis of its assertion of jurisdiction over Henke Road. The causes were consolidated and the trial court found Lake Saint Louis' attempt to annex failed because no two-thirds majority was reached in the second election and that under § 71.012 Dardenne Prairie had properly annexed—and therefore properly exercised jurisdiction over—Henke Road.

As both parties claim to have completed their annexations successfully and both thereby assert jurisdiction over the same territory, we look first to the legal validity of their respective claims. Unless either fails this examination, we must then look to the question of prior jurisdiction.

## I.

First, Lake Saint Louis' annexation will be examined. Where there is any public objection to a city's plan to annex land contiguous to its then existing boundaries the procedures set out in § 71.015 must be followed. No dispute exists that Lake Saint Louis properly passed an ordinance describing the annexation proposal and obtained a declaratory judgment approving the annexation from the appropriate circuit court. In issue here is the election requirement of § 71.015(6), under which the proposal must be:

> approved by a majority of the total votes cast in the city, town, or village and by a separate majority of the total votes cast in the unincorporated territory sought to be annexed. However, should less than a majority of the total votes cast in the area proposed to be annexed vote in favor of the proposal, but at least a majority of the total votes cast in the city vote in favor of the proposal, then the proposal shall again be voted upon.... If at least two-thirds of the qualified electors voting thereon are in favor of the annexation, then the city may proceed to annex the territory.

The trial court found the proposal did not carry by the required majority in the area to be annexed in the first election and therefore, that a second election was required. We disagree.

No appellate court has construed the meaning of the election requirement of § 71.015 where the area sought to be annexed is uninhabited.[1] In doing so ourselves, we fundamentally seek to give ef-

---

**1.** A similar situation existed in the case of *City of St. Peters v. Shop N' Save Warehouse Foods, Inc.,* 710 S.W.2d 409 (Mo.App.1986). Determination of the issue was not necessary to the disposition of that case. However, we did observe that under the election process of § 71.-015(6) "the annexation would have been a foregone conclusion because the area in question was entirely commercial without any voters." *Id.* at 413, fn. 3.

fect to the intent of the lawmakers. That intent may be gleaned not only from the plain words of the statute, but also by identifying the problems sought to be remedied and from the circumstances and conditions existing at the time of enactment. *Sermchief v. Gonzales,* 660 S.W.2d 683, 688 (Mo. banc 1983).

The plain words of the statute provide little guidance here: when no votes are cast in the area to be annexed because it is uninhabited, there cannot logically be either a "majority" or "less than a majority" of those votes. Thus, we turn to the circumstances extant when § 71.015(6) was enacted.

Section 71.015 was amended in 1980 to include the election requirement amidst allegations the prior statute violated the due process rights of those whose property was being annexed as they were given no voice in the annexation process. *See, e.g., City of Branson v. Biedenstein,* 618 S.W.2d 665 (Mo. banc 1981); *City of Lake Ozark v. Prewitt,* 631 S.W.2d 103 (Mo.App.1982). We can infer from this that the intent of the legislature was to give inhabitants of an area sought to be involuntarily annexed a means of protecting their interests.

■ That rationale is clearly inapplicable here, as no one lives in the area of the proposed annexation. To construe the statute to require a second election in this circumstance would be a patently absurd waste of public time and money. The legislature is presumed to intend a just law that will serve the general welfare rather than an absurd one. *State ex rel. Lack v. Melton,* 692 S.W.2d 302, 304 (Mo. banc 1985). Accordingly, we find that § 71.015(6) does not dictate a second election where a simple majority is achieved in the city seeking to annex and the area to be annexed is uninhabited. Lake Saint Louis thus properly annexed Henke Road with the first election.

## II.

Regarding the annexation of the disputed territory by Dardenne Prairie, the issue, as presented by Lake Saint Louis, is whether the term "municipality" as used in § 71.012 encompasses a town organized under § 80.020, RSMo.1978. Lake Saint Louis contends the voluntary annexation procedures under § 71.012 are not available to towns and villages, and that such entities are limited to the extension of their boundaries pursuant to the procedures set forth in § 80.030, which provides that a town or village desiring to annex adjacent territory "shall file a petition with the county court. . . ." Lake Saint Louis argues that this statute, relating as it does only to a specific type of governmental entity, prevails over the generalization "any municipality" in § 71.012. We disagree.

The cardinal and overriding rule of statutory construction is that the intent of the legislature controls. *Tribune Publishing Co. v. Curators of University of Missouri,* 661 S.W.2d 575, 583 (Mo.App.1983). In the absence of any recorded legislative history in Missouri, a number of guidelines have developed to which courts resort in order to determine legislative intent if it is not clear from the plain and ordinary language used in the statute. *Id.* These guidelines, sometimes referred to as rules of statutory construction, are "diverse and sometimes conflicting;" they are not absolutes but "may be considered merely as aids in reaching" the purpose and object of the legislation. *Edwards v. St. Louis County,* 429 S.W.2d 718, 722 (Mo. banc 1968).

■ One such aid is that words not specially defined in the statute should be interpreted according to their ordinary meaning. *St. Louis Country Club v. Administrative Hearing Commission of Mo.,* 657 S.W.2d 614 (Mo. banc 1983). As such, "municipality" is defined in Webster's Third New International Dictionary of the English Language, unabridged, 1981, as meaning "a primarily urban political unit (as a town or city) having corporate status and usually powers of self-government." Dardenne Prairie is incorporated and self-governing. However, the record before us is silent regarding its population, geographic size or

the nature of its land use, important factors in the popular conception of the distinction between urban and rural communities. *See City of St. Peters v. Kodner Development Corporation*, 525 S.W.2d 97, 99 (Mo.App.1975). Therefore, we cannot conclude that Dardenne Prairie is a municipality by reason of being a "primarily urban political unit."

An additional obstacle to the interpretation of "municipality" as all encompassing is the fact that the legislature, in simultaneously amending § 71.012, pertaining to voluntary annexations, and § 71.015, pertaining to involuntary annexations, in 1980, utilized the word "municipality" in the former but referred to "any city, town or village" in the latter. Lake Saint Louis argues this variation in terminology precludes an interpretation of "municipality" in § 71.012 as inclusive of towns and villages. However whatever merit this argument may seem to have at first glance is dissipated by consideration of the historical background of the legislation. Mindful of the concept that "[t]he legislature is presumed to know the law that has been amended, and to have used particular words in light of prior judicial and legislative action," *State v. Davis*, 675 S.W.2d 410, 415 (Mo.App.1984), we look to the history of annexation legislation in Missouri.

Since 1808, towns and villages have been authorized to extend their boundaries by annexing adjoining lands through the filing of a petition with the county court which determines the propriety of the action after public hearing. 1 Terr.Laws, p. 184, § 1; § 80.030, RSMo.1978. In 1953, the legislature enacted § 71.015, the Sawyer Act, providing for a city to annex land after obtaining authorization to do so in a declaratory judgment action filed in the circuit court. In holding § 71.015 was not available for annexation by a town, the court in *Emerson Electric Manufacturing Co. v. City of Ferguson*, 376 S.W.2d 643, 646–47 (Mo.App.1964), stated:

It should also be noted that the Sawyer Act uses the word "city." The various sections of Chapter 71 of our statutes make very precise distinctions between "city," "city, incorporated town or incorporated village," and "city, town or village." Some sections of our statutes apply to cities only and some apply to all classes of municipalities. We further note that the legislature has classified cities into four statutory classes with the result that the word "city" has a very definite meaning. This being so we cannot consider the legislature to have intended the term "city" as used in the Sawyer Act to mean "city, town or village." It follows that the provisions of the Sawyer Act are not applicable to towns.

Implicit in this decision is the recognition that the word "municipality" has a broader meaning than the word "city" and includes towns and villages. In 1976 and again in 1978 the legislature enacted amendments to § 71.012 authorizing the governing body of any *municipality* to annex contiguous areas upon the request of all of the landowners within such area. We attribute to the legislature knowledge of the *Emerson Electric* interpretation of "municipality" as being all inclusive. In 1980, major legislative changes in the annexation procedures were enacted, as sections 71.012, 71.015 and other annexation statutes were amended. S.S.H.B. 1110, 2d Reg.Sess., 1980 Laws of Missouri 253. In § 71.012 the legislature continued to authorize *municipalities* to undertake voluntary annexations. In § 71.015 authorization for involuntary annexations was broadened from cities to cities, towns and villages. In view of the fact that subsequent to the *Emerson Electric* decision the legislature utilized the word "municipality" rather than the judicially restricted word "city" in annexation legislation, we believe the legislative intent that "municipality" be broadly construed as inclusive of cities, towns and villages is inescapable. Additional support for this conclusion rests in the fact that S.S.H.B. 1110 included an amendment of § 71.870 which, although not pertinent to the instant case, referred to certain cities, town and villages as "such municipalities." Moreover, notwithstanding the absence of the

words "city, town or village" in § 71.012 as amended, that section was a part of a bill containing an emergency clause based upon the immediate need to insure orderly annexation procedures "for the various cities, towns and villages of this state." Accordingly, we conclude the word "municipality" in § 71.012 and the term "city, town or village" in § 71.015 are intended to be construed synonymously, not distinctively.

The argument of Lake Saint Louis that under the "specific controls general" rule of statutory construction, § 80.030, relating to annexation by towns and villages, must prevail over § 71.012, relating to all municipalities, has no application here. That guideline is pertinent only where two statutes relating to the same subject are irreconcilably inconsistent. *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864, 867 (Mo. banc 1983). The two statutes must be construed together when possible and, unless one prohibits what the other permits, both must stand. *State ex inf. Ashcroft v. City of Fulton*, 642 S.W.2d 617, 620 (Mo. banc 1982). No such conflict exists between § 71.012 and § 80.030. Rather, they provide alternative procedures for annexation by a town or village.

### III.

■ Under the doctrine of prior jurisdiction, where two public bodies assert jurisdiction over the same territory by virtue of annexation proceedings, that which took the first valid step toward annexation will prevail regardless of which finished first. *State ex rel. City of Jackson v. Grimm*, 555 S.W.2d 643, 646 (Mo.App.1977). With regard to involuntary annexation by Lake Saint Louis under § 71.015, the first valid step for annexation was the passage of its enabling resolution on May 5, 1982. *Id.* This action starts in motion the remaining procedures required by the statute.

We have not been cited to and independent research has failed to disclose any authority defining the first valid step toward voluntary annexation under § 71.012.

However, "when there is a statute governing annexation, and the statute prescribes the procedure to be followed, then the doing of the first thing required by the statute marks the beginning of the proceedings. *City of Joplin v. Village of Shoal Creek Drive*, 434 S.W.2d 25, 30–31 (Mo. App.1968). § 71.012.2(1) provides:

When a verified petition, requesting annexation and signed by the owners of all fee interests of record in all tracts of real property located within the area proposed to be annexed, is presented to the governing body of the municipality, the governing body shall hold a public hearing concerning the matter not less than fourteen nor more than sixty days after the petition is received, and the hearing shall be held not less than seven days after notice of the hearing is published in newspapers of general circulation qualified to publish legal matters.

■ Under the statute, the event which starts the procedure in motion is the presentment to the governing body of the municipality of *a* verified petition signed by the owners of *all* fee interests of record in *all* tracts of real property located within the area of proposed annexation. In the instant case that event never occurred. Rather than *a* petition, Dardenne Prairie was presented at different times with separate petitions, each signed by the owners of various tracts within the area of proposed annexation. Regarding the area encompassed by annexation ordinance 21, 16 separate petitions were filed between November 21, 1981 and July 2, 1982. 15 of these petitions were presented and the public hearing held on January 5, 1982, and one on September 2, 1982. A single ordinance of annexation of these 16 tracts of land was adopted November 10, 1983. Regarding ordinance 24, three separate petitions were filed between December 4, 1981 and November 15, 1983. One of these petitions was presented and the hearing held on January 5, 1982, the other two on December 13, 1983. The single ordinance of an-

nexation of the three tracts was adopted December 27, 1983.

█ Because the date upon which *a* verified petition is presented is crucial to the determination of prior jurisdiction, under the circumstances of this case, we cannot ignore the failure to comply strictly with the statutory requirement. The piecemeal approach adopted by Dardenne Prairie would seek to establish priority of its jurisdiction by reason of its annexation of land not voluntarily offered to it until after the commencement of the Lake Saint Louis annexation on May 5, 1982. Considerations of continguity as well as possible objections of interested parties may well be affected by additions to or subtractions from the area of proposed annexation. Therefore, publication of notices describing different areas preceding hearings conducted at different times are not appropriately consolidated for the purpose of a single annexation proceeding. Moreover, even if such consolidation was permissible, it could not be effectuated until the last of multiple petitions was presented. Otherwise, the statutory requirement of a petition signed by *all* owners of *all* tracts within the area of proposed annexation would not be satisfied. In this case, the final petition regarding the area annexed under ordinance 21 was presented on September 2, 1982 and that under ordinance 24 on December 13, 1983, both dates long after the first valid step taken by Lake Saint Louis toward a completed annexation. Accordingly, Lake Saint Louis has acquired prior jurisdiction over the disputed territory.

The judgment of the trial court is reversed and the cause is remanded with directions to dismiss the petition of the town of Dardenne Prairie and to grant the petition of the City of Lake Saint Louis and to enter judgment ousting the town of Dardenne Prairie from the exercise of jurisdiction over the area validly annexed by the City of Lake Saint Louis.

SMITH and SNYDER, JJ., concur.