STATE of Missouri, ex inf., Larry D. NESSLAGE, et al., Relators,

v.

**VILLAGE OF FLINT HILL, Missouri, Respondent.**

STATE of Missouri, ex inf., Larry D. NESSLAGE, et al., Relators,

v.

**CITY OF WENTZVILLE, Missouri, Respondent.**

No. 50518.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 21, 1986.

Norman C. Steimel, St. Charles, for relators.

Robert M. Wohler, O'Fallon, for respondents.

SATZ, Judge.

This is an action under the Sawyer Act, § 71.015 RSMo.Supp.1984.[1] The City of Wentzville (Wentzville) and the Village of Flint Hill (Flint Hill) attempted to annex the same land. After a hearing on stipulated facts, the trial court "divested" Flint Hill "of any jurisdiction over" the land in question and concluded that Wentzville "must" hold "new elections ... within a reasonable period of time" in order "to complete [its] annexation process." Flint Hill appeals. We reverse and remand with directions.

Wentzville, a municipal corporation, and Flint Hill, a village, are both located in St. Charles County, Missouri.[2] On January 16, 1984, proceeding under § 71.015, Wentzville passed a resolution to involuntarily annex a portion of Highway 61. After a public hearing on February 22, 1984,

---

1. All statutory references are to RSMo Supp. 1984, unless otherwise indicated.

2. Wentzville is organized under Chapter 79, RSMo. Flint Hill is organized under Chapter 80 RSMo. St. Charles County is a first class county without a charter form of government.

Wentzville passed an ordinance authorizing the filing of a Petition for Declaratory Judgment and, on the next day, filed the petition in St. Charles Circuit Court. Subsequently, the Court issued a declaratory judgment authorizing Wentzville's proposed annexation. On August 7, 1984, Wentzville held an election on the annexation proposal. Four hundred of Wentzville's residents voted in favor of annexation, and 147 voted against the proposal. Since the area of Highway 61 sought to be annexed was uninhabited, there were no votes either for or against the annexation in the area being annexed. On August 22, 1984, Wentzville certified the results of the election and declared the annexation effective.

However, on April 17, 1984, during Wentzville's annexation proceedings, the State Highway Commission filed a petition with Flint Hill for the voluntary annexation of an overlapping portion of Highway 61. On June 21, 1984, proceeding under § 71.012, Flint Hill passed an ordinance approving the annexation and recorded the ordinance with the St. Charles County Administrative Court on August 6, 1984.

Subsequently, Wentzville filed a Petition in Quo Warranto seeking to oust Flint Hill from the disputed portion of Highway 61. Flint Hill filed an answer and counterclaim. Then, Flint Hill filed its own Petition in Quo Warranto seeking to oust Wentzville from the disputed portion of the highway. Wentzville filed an answer and counterclaim in that case. The two cases were consolidated and submitted to the trial court upon stipulated facts.

The trial court issued Findings of Fact and Conclusions of Law. The trial court concluded that Wentzville's annexation failed because Wentzville did not hold a second election within 120 days of its first election as "required" by § 71.015. The trial court also "divested" Flint Hill "of any jurisdiction over" the land in question because Wentzville had taken the first le-

gal step toward annexation and, therefore, had "priority of jurisdiction". Both parties filed motions to amend the judgment. The trial court amended its judgment by changing only one of its conclusions of law. Rather than concluding Wentzville's annexation had failed totally, the court concluded Wentzville had only failed "to complete" the remainder of its annexation process and simply needed to hold "new elections within a reasonable period of time" to complete its annexation. Flint Hill appeals from the amended judgment.[3]

Flint Hill argues Wentzville did not comply with the requirements of § 71.015 in annexing the disputed area and, therefore, Flint Hill contends, Wentzville is barred from further attempts at annexation for a period of two years. Flint Hill bases its argument on subsection 6 of § 71.015, which requires the proposed annexation must be:

approved by a majority of the total votes cast in the city, town, or village and by a separate majority of the total votes cast in the unincorporated territory sought to be annexed. However, should less than a majority of the total votes cast in the area proposed to be annexed vote in favor of the proposal, but at least a majority of the total votes cast in the city vote in favor of the proposal, then the proposal shall again be voted upon in not more than one hundred twenty days.... If at least two-thirds of the qualified electors voting thereon are in favor of the annexation, then the city may proceed to annex the territory. If the proposal fails to receive the necessary majority, no part of the area sought to be annexed may be the subject of another proposal to annex for a period of two years from the date of said election....

■ As stipulated by the parties, Wentzville held an election for its inhabitants but did not hold an election in the area to be annexed. Consequently, there was not a majority of votes approving the annexation

3. The question of whether a "village" can process a voluntary annexation under § 71.012 is

not before us.

in the area to be annexed. This being the case, Flint Hill contends, Wentzville was required to hold a second election within 120 days and secure a two-thirds combined voter approval. Since Wentzville did not hold a second election within 120 days, Flint Hill argues, Wentzville's annexation attempt failed. We disagree.

Wentzville is seeking to annex a portion of Highway 61 which is uninhabited. Arguably, the State Highway Commission "controls" that area and, to that extent, perhaps, could be said to be an inhabitant of the area. *See, Schlarman v. City of St. Charles,* 623 S.W.2d 57, 59 (Mo.App.1981). This is a weak argument, at best. Moreover, it is highly questionable whether the Highway Commission could vote in the annexation election. *See State ex rel. State Highway Commission v. City of St. Louis,* 575 S.W.2d 712, 720 (Mo.App.1978). Consequently, there was no one in the area to be annexed to either approve or disapprove the annexation proposal. This raises the issue before us: whether § 71.015 requires a second election when there are no inhabitants in the area to be annexed.

Section 71.015 does not explicitly address this issue. This Court, however, was recently confronted with the issue, and, after analyzing the legislative intent implicit in § 71.015, the Court held "§ 71.015(6) does not dictate a second election where a simple majority is achieved in the city seeking to annex and the area to be annexed is uninhabited." *State ex inf. Nesslage v. City of Lake St. Louis,* 718 S.W.2d 214 (Mo.App.E.D., 1986). Thus, Wentzville properly annexed the area in question with its first election.

Flint Hill also contends the trial court erred in using the "doctrine of prior jurisdiction" to invalidate Flint Hill's annexation. We disagree.

 We have long recognized "there cannot be two municipal corporations with co-extensive powers of government extending over the same area." *Mayor of Liberty v. Dealers Transport Co.,* 343 S.W.2d 40, 42 (Mo. banc 1961). To keep competing annexations from producing this conflict,

the doctrine of prior jurisdiction was developed. If two public bodies claim jurisdiction over the same area by annexation, the doctrine creates a superior claim in the one which took the first valid step toward annexation. *Id.* at 41–42. Flint Hill acknowledges Wentzville took the first valid step toward annexation when Wentzville passed its resolution to annex the area on January 16, 1984. *See City of Sugar Creek v. City of Independence,* 466 S.W.2d 100, 104 (Mo. App.1971); *City of Joplin v. Village of Shoal Creek Drive,* 434 S.W.2d 25, 29 (Mo. App.1968). Flint Hill contends, however, the doctrine of prior jurisdiction can be applied only after the annexations in question are completed. Since Wentzville has not completed its annexation process, Flint Hill argues, the doctrine does not apply.

 Flint Hill misreads the law. The doctrine of prior jurisdiction can be applied whether the annexations in question are completed or not. *Mayor of Liberty v. Dealers Transport Co.,* 343 S.W.2d at 42. *See State ex inf. Voigts v. City of Pleasant Valley,* 453 S.W.2d 700, 707 (Mo.App. 1970). Moreover, the annexations here have been completed. Wentzville has completed its annexation process by the one election it held, and certainly Flint Hill does not contend it failed to complete its own annexation process. See § 70.012.

Flint Hill also argues the doctrine of prior jurisdiction should not apply here because its "voluntary" annexation is involved. In a voluntary annexation, Flint Hill notes, it is the landowners who initiate the annexation process. To allow the doctrine of prior jurisdiction to defeat this process, Flint Hill contends, would infringe the landowners' right "to control their own property".

 Flint Hill has cited no cases to support this argument, and we have found none. Nor do we find the argument persuasive. The sovereign can and does restrict and regulate the freedom to "control" property; condemnation, for example. More important, a voluntary annexation does not materially differ from an involuntary annexation insofar as the doctrine of

prior jurisdiction is concerned. Residents affected by an involuntary annexation proceeding have a voice in the process no different than the voice residents have in a voluntary annexation proceeding. In the involuntary annexation, the voice of the residents is heard through the election process required by § 71.015.

The doctrine of prior jurisdiction obviates unacceptable conflicts between public bodies processing competing annexations. To make the exception to the doctrine Flint Hill urges would partially destroy an otherwise sensible and practical resolution of unacceptable conflicts. We see no need for that.

We have disposed of the issues raised by Flint Hill on appeal. This does not, however, dispose of the appeal. As previously noted, the trial court not only applied the doctrine of prior jurisdiction to support its judgment, it also ruled Wentzville must hold "new elections" in order "to complete [its] annexation process." But we have held that Wentzville's single election here completed its annexation process and, thus, no second or additional elections need be held. Obviously, our decision conflicts with the trial court's ruling. Normally, the conflict would present no problem. We would simply reverse and remand the cause with directions to the trial court to enter a new judgment in compliance with our decision. The procedural status of this appeal, however, presents an obstacle to this process.

Wentzville did not appeal the judgment of the trial court. Generally, in the absence of a cross appeal, a respondent cannot complain about an adverse ruling of the trial court. *E.g., Goldberg v. State Tax Commission*, 618 S.W.2d 635, 642 (Mo. 1981). However, if otherwise validly presented, a respondent may attack the erroneous ruling of the trial court for the purpose of sustaining a judgment in its favor. *See, e.g., Cascio v. Garrett*, 535 S.W.2d 272, 274 (Mo.App.1976). The trial court's judgment requiring Wentzville to hold a second election when none is needed may have been entered "in favor" of Wentzville, but its effect is certainly adverse to Wentzville's interest. In view of

the law as now decided by us, Wentzville does not need or want to sustain the "judgment in its favor" requiring it to hold a second election. No acceptable legal fiction can change that logic. What Wentzville needs is a modification of the trial court's judgment. But Wentzville, as respondent, cannot use the erroneous ruling of the trial court for the purpose of modifying the judgment in its favor. *E.g., St. Charles Sav. Bank v. Denker*, 275 Mo. 607, 205 S.W. 208, 212 (1918).

To follow these procedural rules, we would be required to leave the judgment as it stands, and, under it, Wentzville would be required to carry out an additional election to complete its annexation. We find no sensible justification to require the taxpayers of Wentzville to spend money and time on what would be an otherwise unnecessary and useless election. An exception must be made to the foregoing procedural rules. Accordingly, under the exceptional circumstances here, we reverse the judgment of the trial court and direct it to enter a judgment in accord with our decision here and this Court's decision in *State ex inf. Nesslage v. City of Lake St. Louis, supra*.

Reversed and remanded.

CRANDALL, P.J., and PUDLOWSKI, J., concur.