CITY OF ST. PETERS, Mo., Respondent,

v.

KODNER DEVELOPMENT CORP. et al., Defendants,

City of St. Charles, Intervenor, Appellant,

County of St. Charles, Intervenor, Appellant,

Missouri Cities Water Co., Appellant.

No. 35412.

Missouri Court of Appeals,
St. Louis District,
Division Two.

June 17, 1975.

Fenton & Prinster, St. Charles, for defendants Raymond Koenig and others.

Bruere & Rollings, St. Charles, for intervenor City of St. Charles.

David A. Dalton, Pros. Atty., of St. Charles County, for intervenor County of St. Charles.

Edwards, Seigfreid, Runge & Hodge, Inc., Mexico, for intervenor Missouri Cities Water Co.

Niedner, Moerschel, Nack & Ahlheim, Rollin J. Moerschel, St. Charles, for respondent.

SMITH, Chief Judge.

This is an appeal from a declaratory judgment by which the Circuit Court authorized the annexation of 1400 acres by the City of St. Peters pursuant to Section 71.-

015 RSMo 1969, V.A.M.S. (The Sawyer's Act). St. Peters is a city of the fourth class located in St. Charles County. Appellants are (1) landowners in the area to be annexed, (2) the City of St. Charles and (3) Missouri Cities Water Company, a utility which is certificated to provide certain services to the area proposed to be annexed. The latter two are intervenors in the action. The County of St. Charles, another intervenor, has not appealed. The original petition for declaratory judgment was in two counts, involving two different areas. The counts were separated for trial and this Court approved the trial court's judgment authorizing the annexation of the land in Count II in *City of St. Peters v. Kodner Development Corporation,* 509 S.W.2d 788 (Mo.App.1974). This appeal involves Count I.

The trial court found that the annexation is reasonable and necessary to the proper growth and development of the City of St. Peters and that the City can provide municipal services to the area to be annexed within a reasonable time. Appellants attack both these findings on a multitude of grounds.

■ Section 71.015 places the burden upon the city to establish that the annexation is reasonable and necessary, both as to the city and the area to be annexed. *City of Bourbon v. Miller,* 420 S.W.2d 296 (Mo. banc 1967) [1–4]. It further carries the burden of showing that the city can furnish its normal municipal services within a reasonable time. *City of St. Ann v. Buschard,* 356 S.W.2d 567 (Mo.App.1962) [12]. We review the trial court's determination de novo and reach our conclusion regarding law and facts but accord deference to the trial court's findings of credibility. As long as the reasonableness of the annexation is fairly debatable, the determination to annex is for the city and the court must uphold it. *City of Bourbon,* supra, [1–4]. While certain guidelines have on occasion been set out by courts, there are no rigid

standards and each case must be decided on its own individual facts and circumstances. New laws and modern economic and social trends must be taken into consideration. *City of Olivette v. Graeler,* 338 S.W.2d 827 (Mo.1960) [20].

■ Certain guidelines which have applicability to annexations involving a city or town located in an essentially rural area are of little benefit when dealing with urban or suburban areas. In the former cases people are locating within an established city and annexation becomes a necessity when the geographic limits are unable to contain the population desirous of locating in the city and it begins spilling over into surrounding land. But it is still the city or town, surrounded by rural or non-residential land, to which the population is affixing itself. A different phenomonon is involved when dealing with America's middle-age problem—urban spread. There the population is associating itself with a large metropolitan area, without regard generally to the particular city, town, village or county in which it is locating. Rather the considerations are proximity and access to an overall metropolitan job market. St. Charles County is in the midst of experiencing explosive residential and commercial population growth because of its proximity and access to the greater St. Louis area. The record here adequately shows that the St. Peters area has changed and is continuing to change from a rural area to an area of residential subdivisions and related commercial developments. Much of the proposed annexation area has been platted, developed or committed to such change. True, much of the area is still rural, but the evidence supports the conclusion that such usage is temporary. The evidence further supports the conclusion that the land values in the area to be annexed are high by virtue of their suitability for residential development, not because of their value as agricultural land.

In *City of Olivette v. Graeler,* 338 S.W.2d 827, l. c. 837, 838 (Mo.1960), the Supreme

Court pointed up the problems involved in rapid residential subdivision development as follows:

"There were 99 incorporated cities in St. Louis County at the time of the trial. Most of them were east of Lindbergh Boulevard. It is obvious that some of them were originally incorporated as a defensive measure to avoid annexation by an adjoining city. Some of them are completely surrounded by other incorporated cities and have no opportunity to extend their boundaries. There is a great deal of competition between other cities for the unincorporated territory adjoining them. . . . It would seem to be in order for the court to consider what the 'proper development' of a city is in these circumstances as an element of the issues of necessity and reasonableness. Decentralization has affected both the industry and the people of the metropolitan community. The increase in land values has been phenomenal in St. Louis County but, on the present record, the increase in this area cannot be attributed wholly to its proximity to a particular city."

With these general thoughts in mind, we turn to appellant's specific contentions. St. Peters annexed areas in 1970, 1971 and in Count II of this suit. Appellants contend that annexations should be infrequent. That has been said in cases. *City of St. Joseph v. Hankinson*, 312 S.W.2d 4 (Mo.1958) [15]. That of course is only one factor in determining reasonableness, and is not conclusive. *City of St. Peters v. Kodner Development Corporation*, supra, [4]. In this case it must be weighed against the explosiveness of the growth of the area, the necessity to plan for and provide services as new areas are taken in, and the reluctance of courts to allow excessive acquisitions at one time. As to the latter factor compare *City of Mexico v. Hodges*, 482 S.W.2d 545 (Mo.App.1972) and *City of Mexico v. Salmons*, 514 S.W.2d 102 (Mo.App.1974). We do not find the frequency of annexation here

to be unjustified in view of the residential development occurring.

Appellants contend the land is not adjacent to or contiguous with the city boundaries and does not serve to even up or square off the boundaries. The area to be annexed abuts the city and under *State ex inf. Taylor ex rel. Kansas City v. North Kansas City*, 360 Mo. 374, 228 S.W.2d 762 (Mo.banc 1950) is adjacent and contiguous. While squaring off boundaries is a consideration it is not paramount. Judicial concern with irregular boundaries is bottomed upon desire that the municipality function "effectively as a unit rather than in several small, unconnected areas which could have problems in providing municipal services." *City of St. Ann v. Spanos*, 490 S.W.2d 653[2] (Mo.App.). The record does not warrant such concern here. In addition drawing the boundaries is exclusively a legislative function. *City of St. Joseph v. Hankinson, supra*. We cannot conclude that such function was exercised arbitrarily. The evidence indicates the boundaries were drawn to include those areas with a strong desire to be annexed, including subdivision developments and commercial developments.

St. Peters already provides water and sewer service to much of the area to be annexed. On sharply contested evidence the trial court concluded that such service could be provided in a reasonable time throughout the annexed area without detracting from or jeopardizing the present customers. We believe the trial court correctly decided that question. The evidence also supports the conclusion that annexation will provide equivalent police protection, reduction in fire insurance rates (fire protection is by an independent governmental unit and will not change), a parks and recreation program, comprehensive zoning, slightly cheaper sewer and water service than intervenor Missouri Cities provides, cheaper streets in subdivisions to be developed, street lights and some increase in property values. The financial condition of

the city is sound and the annexation will not weaken, and will probably strengthen that. Certain additional intangibles such as a sense of community and greater municipal attention are also indicated by the record. In addition the opportunity for the area to develop as one entity rather than as a series of balkanized subdivision municipalities supports the court's finding of reasonableness and necessity as to both annexed area and city. It is clear that the increased tax base and the increased services is of benefit to both areas involved.

 In this case where the problem is not spill-over of population from the present city but inundation from other areas we consider the evidence of some vacant space in the city to be of little value. The annexation is not, and is not claimed to be, for the purpose of correcting over-population or lack of area in the city. It is to take into the municipal fold a large area of rapid residential and commercial development in close proximity to the city. We do not find such intention and implementation to be unreasonable or unnecessary. We are cognizant of the "county community" concept utilized by the Supreme Court in *City of Olivette v. Graeler,* 369 S.W.2d 85 (Mo.1963) (Second Graeler). We do not find this case comparable to Second Graeler. We note initially that the County of St. Charles has not appealed from the action of the trial court. The evidence here fails to establish a county community need that the land remain under county control as part of the overall development of the county. The area here involved is largely suited for residential and commercial usage, not for industrial usage beneficial to the county as a whole. Essentially the question is whether this residential and commercial area will more properly develop under the planning and supervision of the city or that of the county. The record adequately supports the judicial and legislative decision that the city offers the better prospects.

Appellants contend that the mayor of St. Peters is in violation of Sec. 106.300 RSMo 1969, V.A.M.S. We need not decide that for there are other remedies, if true. The record does not indicate the city is corruptly run or that the mayor is in any way incompetent. The alleged conflict of interest does not demonstrate or warrant the conclusion that the annexation is not reasonable and necessary.

The judgment is affirmed.

KELLY and STEWART, JJ., concur.