**CITY OF ST. PETERS, Missouri,
Plaintiff-Appellant,**

v.

**SHOP N' SAVE WAREHOUSE FOODS,
INC., et al., Defendants-Respondents.**

**No. 50405.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 15, 1986.

Motion for Rehearing and/or Transfer
Denied May 13, 1986.

Application to Transfer Denied
June 17, 1986.

Rollin J. Moerschel, St. Charles, for plaintiff-appellant.

Keith Hazelwood, St. Charles, for defendants-respondents.

PUDLOWSKI, Judge.

The City of St. Peters appeals from the trial court's denial of its petition for a declaratory judgment filed pursuant to Section 71.015, RSMo Cum.Supp.1984, to authorize further proceedings to annex an 11.92 acre tract of land. We reverse.

St. Peters is a fourth class city located in St. Charles County. The respondents are corporations, landowners, and tenants in the area subject to the proposed annexation. The area in question is a fully developed tract of land completely surrounded by the City of St. Peters and consists of a retail lumber yard, a gas station, and a shopping center.[1] The area is bounded on the east by Jungs Station Road, a street in St. Peters, on the north by State Highway 94, and on the south by a St. Peters residential development.

---

1. The land in question became completely surrounded by St. Peters on April 26, 1984.

Before St. Peters undertook any official action to annex the land in question, the city's administrative staff prepared a draft Plan of Intent for the tract at the request of the city's Board of Aldermen. On May 24, 1984, the Board of Aldermen adopted Resolution No. 525 which described the tract to be annexed by metes and bounds, determined the entire tract to be contiguous to the city's existing boundaries, and found the proposed annexation to be reasonable and necessary. Resolution No. 525 also empowered the city's attorney to file a declaratory judgment action to authorize the proposed annexation. In addition, the Board of Aldermen passed Ordinance No. 891 which established the procedure for the annexation of the land in question and set June 14, 1984 as the date for a public hearing on the proposed annexation.

Earlier, on May 11, 1984, the city administrator, Robert Irvin, notified by certified mail all the owners of record within the area in question that a public hearing would be held regarding the annexation of their land on June 14, 1984. In addition, on May 28, 1984, the city gave further notice of the hearing by publication in the *St. Peters Courier-Post.*

Thereafter, the St. Peters Board of Aldermen proposed Bill No. 84–048 which identified the tract to be annexed, stated that the perimeter of the tract was 3600.41 feet and completely contiguous to St. Peters' existing city limits, that the annexation was reasonable and necessary to the city's proper development, and that the city had developed a Plan of Intent to provide services to the area upon annexation.

On June 14, 1984, Bill No. 84–048 was read for the first time at a meeting of the Board of Aldermen. Following the bill's first reading, it was tabled and a public hearing was held regarding the proposed annexation. Later, the bill was read for a second and third time at the meeting and subsequently passed by the Board of Aldermen and approved by the Mayor of St. Peters as Ordinance No. 896.

Following the passage of Ordinance No. 896, the attorney for St. Peters filed a petition for a declaratory judgment in the Circuit Court of St. Charles County on August 15, 1984. During the three days of trial, the trial court heard extensive testimony concerning the municipal services which would be available to the area in question upon annexation.

St. Peters provides extensive maintenance and repairs on its public streets. The area subject to the proposed annexation, however, has no public streets and the maintenance of its driveways and parking lots would remain the responsibility of the owners after annexation. Nevertheless, Jungs Station Road which forms the eastern boundary of the area in question is scheduled for widening by the city in the future because it is a major arterial street. St. Peters also plans to provide Jungs Station Road with street lighting immediately following annexation.

Missouri Cities Water Company provides water to the area to be annexed. It would continue to serve the area if the annexation would take place. If needed or desired by the occupants of the area, St. Peters could provide water within 60 to 90 days following the annexation.

Sewer service is provided by the Duckett Creek Sewer District which would continue to do so following annexation. St. Peters could provide sewer service if needed once it built a lift station which could be completed within six months of annexation.

St. Peters maintains 260 acres of park land in fourteen separate parks. The city owns and operates a nine-hole golf course and three municipal swimming pools. It is developing a major park near the area sought to be annexed.

St. Peters provides no fire protection, ambulance service, or waste disposal. St. Charles Fire Protection District serves the area in question and will continue to serve it whether the annexation takes place or not. Similarly, St. Charles Ambulance District now provides the area with ambulance service and will continue to do so in the future. Likewise, trash collection will be

handled by private haulers regardless of any annexation.

St. Peters has adopted the BOCA Building Code, the BOCA Fire Prevention Code, and the BOCA Existing Structures Code. The city requires occupancy permits for commercial property. St. Charles County which presently has jurisdiction over the area in question also has the BOCA Building Code. Both St. Peters and St. Charles County inspect commercial property before a new tenant is allowed into a building, either on initial occupancy or upon re-occupancy.

St. Peters also provides rabies and rodent control, mosquito abatement, and restaurant inspection. These services are also performed by St. Charles County. Both jurisdictions have an impoundment facility to take care of stray dogs.

St. Peters has a police department composed of 41 full-time and 1 part-time personnel. In fiscal year 1985–86, the city plans to add two patrolmen. Already, officers from St. Peters patrol the area and roads surrounding the area subject to the proposed annexation. The city police department also operates from a new "state of the art" facility which has a "Beartex" system, which is the latest alarm device for hook-up with business alarms. In addition, the city police department conducts special programs for banks and savings and loan associations on what to do in the event of a robbery. Response time to the area in question upon annexation would be 3 to 5 minutes at the most.

St. Charles County presently provides police protection to the area in question. St. Charles County is currently constructing a "state of the art" police headquarters. The average response time for emergency calls in the area in question by the St. Charles County Sheriff's Office from 1982 to 1984 was 2 to 4½ minutes.

If the proposed annexation were accomplished, based on calculations involving additional sales tax, utility tax, liquor licenses, merchants licenses, cigarette tax, personal property tax, and real estate tax, the area subject to the proposed annexation would have an additional tax burden of $285,787.80 per year.

Following trial, St. Peters and the respondents submitted proposed findings of fact and conclusions of law. In its judgment denying the city's petition for a declaratory judgment to authorize further annexation proceedings, the trial court adopted the respondents' findings and conclusions in their entirety and found that no reasonable basis existed for the proposed annexation for the following reasons: (1) that the proposed annexation was a self-serving tax grab; (2) that no "community of interests" existed between St. Peters and the area to be annexed; (3) that the area to be annexed would not profit from annexation because the city would render no additional services not already provided; (4) that the area would pay additional taxes without the quid pro quo of additional benefits; and (5) that the tax revenue derived from the area would benefit property owners in other parts of the city. The trial court also determined that St. Peters failed to follow the procedures for annexation as outlined in Section 71.015, RSMo Cum. Supp.1984.

On appeal, St. Peters raises two issues. First, St. Peters contends the trial court erred in denying the city's petition for a declaratory judgment because the legislative decision to annex the land in question was fairly debatable because the evidence supported the requirements of reasonableness and necessity to the city. Second, St. Peters asserts the trial court erred in holding that the city failed to comply with the procedural requirements of Section 71.015, RSMo Cum.Supp.1984.

We first address the threshold question whether St. Peters complied with the procedural requirements outlined in Section 71.015. In support of a negative resolution of this question, the respondents argue that St. Peters failed to follow the proper time sequence necessary to institute annexation proceedings; that the city failed to provide adequate notice to all fee owners in the area of the proposed annexation; and that the city failed to make a thorough investi-

gation into its ability to provide services to the area in question. We disagree.

■ Before a municipality may adopt a resolution to annex any unincorporated tract of land, the municipality must first determine as a condition precedent that the land to be annexed is contiguous to the existing city limits and that the length of the contiguous boundary common to the existing city limit and the area to be annexed is at least fifteen percent of the length of the perimeter of the proposed area for annexation. Section 71.015(1). In the present case, prior to instituting any legislative proceedings, St. Peters determined that the fifteen percent contiguous boundary requirement was met. In further compliance with Section 71.015(1), the Board of Aldermen of St. Peters adopted Resolution No. 525 on May 24, 1984, which declared the city's intent to annex the area in question, stated that more than fifteen percent of the area's boundary was contiguous to the city's existing boundary, and empowered the city's attorney to file a declaratory judgment action to authorize the annexation.[2] In addition, the Board of Aldermen passed Ordinance No. 891 which established the procedure for annexation and set June 14, 1984 as the date for a public hearing on the proposed annexation.

■ Once the condition precedent mandating a minimum of fifteen percent contiguity between St. Peters and the area to be annexed was met, St. Peters was required to propose an ordinance setting forth the following: (1) that compliance with the condition precedent of contiguous boundaries was met; (2) that the proposed annexation was reasonable and necessary to the municipality's proper development; (3) that the municipality had developed a "Plan of Intent" to provide services to the area sought for annexation; (4) that a public hearing would be held prior to the adoption of the annexation ordinance; and (5) that the effective date of the annexation was established. Section 71.015(2).

■ St. Peters properly fulfilled these requirements. The minutes of the Board of Aldermen meeting of June 14, 1984 reflect that on June 14, 1984, the proposed ordinance required by Section 71.015(2) was introduced and became Bill No. 84–048 and that the bill was read one-time and then tabled. The proposed ordinance met the statutory requirements by re-affirming the fifteen percent contiguity requirement, by determining that the proposed annexation was reasonable and necessary to the city's proper development, by reciting that the city had developed a "Plan of Intent" to provide services to the area proposed for annexation, by calling for a public hearing which was held on June 14, 1984 after Bill No. 84–048 was tabled, and by stating that the annexation would become effective immediately following a favorable vote in the elections specified by Section 71.015(6).[3]

2. Although St. Peters authorized its attorney to file a declaratory judgment action before an annexation ordinance was passed, the city did not violate any statutory provision. The city did not file its declaratory judgment petition until August 15, 1984, well after the ordinance was passed on June 14, 1984. This accords with the procedure established in Section 71.015(5).

3. Following the adoption of an annexation ordinance, the municipality must file a declaratory judgment action. Section 71.015(5). If the court authorizes the annexation, dual elections are held, one in the annexing municipality, the other in the area to be annexed. Section 71.-015(6). A simple majority of the votes in both elections will suffice for passage. However, should the vote in the area to be annexed fail and pass in the municipality, a second election may be held within 120 days. The annexation will then be approved if the total combined favorable vote is at least two-thirds of the "qualified electors."

The present case presents the unique situation where the annexation would have been a foregone conclusion because the area in question was entirely commercial without any voters. However, the proposed annexation was not improper because there were no resident voters. The businesses and service providers had the opportunity to adduce evidence and address the issues raised. Moreover, it is not generally improper to annex an area containing commercial facilities situated outside of the annexing municipality prior to annexation. Businesses necessarily subject themselves to local government as it is established in accordance with law. *City of Town & Country v. St. Louis County,* 657 S.W.2d 598, 608 (Mo. banc 1983).

■ St. Peters further complied with the requirements set out in Section 71.015(3). Once a date has been set for a public hearing on an annexation ordinance, the annexing municipality is required by Section 71.015(3) to make a good faith effort to notify all fee owners of record within the area of the proposed annexation by certified mail, not less than thirty nor more than sixty days before the hearing. The annexing municipality must also notify all the residents of the area to be annexed by publication in a newspaper at least two weeks before the hearing. In the present case, St. Peters complied with these requirements. On May 11, 1984, the city notified by certified mail all the fee owners within the area to be annexed of the June 14, 1984 hearing.[4] Although these notices were mailed before St. Peters undertook any legislative action to authorize the hearing, the city's actions were not improper. No provision of Section 71.015 requires any formal conditions precedent by the annexing authority's governing body to authorize the posting of the notices to fee owners by certified mail so long as the notices are given not less than thirty nor more than sixty days before the hearing. Moreover, even had St. Peters violated the statutory prescription for notice, the respondents would not have been prejudiced by the city's actions. The purpose of notice is to provide the opportunity to have issues of direct impact voiced and addressed. *City of Town & Country v. St. Louis County,* 657 S.W.2d 598, 607 (Mo. banc 1983). In the present case, the respondents were able to vigorously litigate the issues raised by the proposed annexation.

■ Although St. Peters mailed the letters of notice on May 11, 1984, the respondents also complain that the city failed to provide adequate notice to all the fee owners within the area of the proposed annexation. We disagree.

At the time of the mailing, there were three fee owners of record: the Scott Brothers Partnership, the Champlin Oil Company. and the Hackmann Lumber Company. The respondents contend that the Hackmann Lumber Company did not receive its certified mail notice of the public hearing until May 24, 1984, even though the post mark reflected that it was mailed on May 11, 1984. Certainly, the failure of an addressee to pick up certified mail or the delay of the post office in delivering the notice, whichever occurred, does not militate against the city in making its good faith effort to give the notice prescribed by Section 71.015(3).

■ The respondents also assert that one of the fee owners, American Petrofina Marketing, Inc., which purchased a parcel in the area to be annexed from Champlin Oil on March 15, 1984, did not receive the requisite notice by certified mail. Section 71.015(3) requires only a good faith effort to notify the "fee owners of record." American Petrofina did not become a fee owner of record until July 5, 1984.

■ The last procedural infirmity posed by the respondents is their contention that the city failed to demonstrate its ability to provide services to the area in question as required by Section 71.015. We disagree. Only where the municipality fails to show that it has given some modicum of consideration to the mechanics and costs of extending services prior to filing its declaratory judgment action must its proposed annexation fail. *City of Cape Girardeau v. Frank,* 637 S.W.2d 786, 788 (Mo.App.1982).

Section 71.015(4) requires the annexing municipality to present at the public hearing its "Plan of Intent" to provide services to the area subject to the proposed annexation. This plan must include a list of major services, *e.g.,* police, fire, and utilities, along with a proposed timetable for implementation of those services not to exceed three years. In the present case, St. Pe-

---

**4.** On May 28, 1984, St. Peters gave further notice of the hearing by publication in the *St. Peters* *Courier-Post.*

ters fulfilled this requirement by adopting a "Plan of Intent" which listed the services presently provided by the city to its residents and businesses together with a timetable to provide these services to the area to be annexed. The record reflects that St. Peters can provide these services to the area in question immediately following annexation with the exceptions of water service which would require 60 to 90 days to provide and sewer service which would require about six months.

We last address St. Peters' remaining point on appeal. The city contends the trial court erred in denying the city's petition for a declaratory judgment because the legislative decision to annex the land in question was fairly debatable in that the evidence supported the requirements of reasonableness and necessity to the city. We agree.

Our scope of review is well summarized by our court in *City of O'Fallon v. Bethman*, 569 S.W.2d 295 (Mo.App.1978).

While the judiciary plays an important role in the annexation process, as contemplated by Section 71.015, case law makes clear that the role is a limited one. Annexation is a legislative function. It is not for the court to decide in the first instance whether the weight of the evidence supports a finding of reasonableness. The initial determination was made in favor of reasonableness when the governing body of the city adopted its annexation resolution. The scope of judicial review is to determine whether the reasonableness of the municipal resolution is fairly debatable; if so, it is conclusive on the courts; if not, the city has abused its legislative discretion and the declaratory judgment will not issue. Under the "fairly debatable" standard the extent of judicial inquiry is whether substantial evidence has been presented by the city to support the determination of its governing body such that reasonable men could differ as to the necessity of the extension.

*Id.* at 301 (citations omitted). Therefore, guided by these principles, our inquiry is limited to whether the exercise of legislative powers was arbitrary and clearly unreasonable. *Binger v. City of Independence*, 588 S.W.2d 481, 483 (Mo. banc 1979).

In following the guidepost of reasonableness, we look to a variety of factors with no one factor controlling and with the case being decided on the totality of its own facts. *Frank*, 637 S.W.2d at 787. The annexing municipality makes a case of reasonableness when it appears that the land to be annexed is necessary or convenient to the reasonable exercise of municipal authority. *Bethman*, 569 S.W.2d at 301. The municipality need not show reasonableness by a preponderance of the evidence. It need only show that the reasonableness of the proposed annexation was fairly debatable. *Binger*, 588 S.W.2d at 485. In addition, both the municipality and the proposed area are entitled to the test of reasonableness and the need of the area for the city's services should be considered. *Bethman*, 569 S.W.2d at 301.

In the present case, the evidence presented by St. Peters created a fairly debatable issue that the annexation of the area in question would be reasonable and necessary to the proper development of the city. Already a community of interests exists between the area to be annexed and the City of St. Peters. The area subject to the proposed annexation is entirely commercial and the success of its retailers and service providers is inextricably linked to the rapid urbanization of St. Peters. The seven hundred residential units currently under construction in the immediate vicinity of the area to be annexed will enhance the economic opportunity of those businesses. Indeed, the area in question is completely surrounded by the city and, as a consequence, must derive a large degree of its economic vitality from the residents of St. Peters.

Moreover, as previously discussed, St. Peters fully complied with the "Plan of Intent" provisions of Section 71.015(4).

The city introduced uncontroverted evidence of its ability and intent to carry out the Plan. Already, every municipal service provided by St. Peters to its residents and businesses would be available forthwith to the area in question upon annexation with the exceptions of sewer and water service and these could be provided to the area well within the three-year time period established by Section 71.015(4)(b). In addition, the area to be annexed would benefit from St. Peters' plan to improve the street lighting on Jungs Station Road, which forms the area's eastern boundary.

Finally, if St. Peters is to control the development in the general area of the proposed annexation, the city must have jurisdiction over the area in question to implement its orderly expansion. Although not determinative of the issue of reasonableness, regularity of boundaries is a positive factor in favor of annexation because it makes possible the more efficient administration of police and other municipal services. *Bethman*, 569 S.W.2d at 308. In the present case, some city services have already spilled over into the area of the proposed annexation. Currently, the St. Peters Police Department patrols around the area in question. Certainly, the legislative decision to annex the area in issue under these circumstances was not unreasonable because the proposed annexation would eliminate an unincorporated tract of land completely surrounded by the city.

For these reasons, we hold that the legislative decision of the City of St. Peters to annex the land in question was fairly debatable in that substantial evidence supported the requirements of reasonableness and necessity to the city. Therefore, we reverse the judgment of the trial court which denied St. Peters' petition for a declaratory judgment on the ground that no reasonable basis existed for the proposed annexation.

The judgment is reversed.

CRANDALL, P.J., and SATZ, J., concur.