**CITY OF CENTRALIA, MO, Respondent,**

v.

**Louis V. NORDEN, et al., Appellants.**

**No. WD 48396.**

Missouri Court of Appeals,
Western District.

July 5, 1994.

As Modified July 28, 1994.

Thomas M. Schneider, Columbia, for appellants.

Merritt M. Beck, III, Centralia, for respondent.

Before SMART, P.J., and KENNEDY and ULRICH, JJ.

PER CURIAM:

Property owners appeal from the judgment of the trial court declaring that annexation of 426 acres of land by the City of Centralia for residential purposes is reasonable and necessary.[1] The plaintiff in this case is the City of Centralia and the defendants are the owners of all the property interests in the land subject to annexation.

Judgment is affirmed.

In 1987, the Planning and Zoning Commission of the City of Centralia adopted a General Comprehensive Plan for the city, which was later adopted by the Board of Alderman ("Board") of the city. In April, 1990, the Board adopted a resolution expressing the city's intent to annex the 426 acres of land forming the basis of this action and authorizing the pursuit of annexation.

The subject land is contiguous and adjacent to the corporate limits of Centralia. The land subject to annexation is uninhabited. There are no structures on the land, except for a shelter house used by the Knights of Columbus as a recreation and picnic area. The land adjoins Centralia at its southwest corner. The annexation would increase the size of the City of Centralia, which is currently approximately 1,520 acres, by twenty-eight percent. State Highway 124, the most heavily traveled roadway in Centralia, crosses the annexation area from the northeast to the southwest. Most of the area to be annexed is cultivated farmland. A small creek and several drainage swales cross through the property. A major interceptor sewer line also runs through the property. A ten acre public park is situated adjacent to the subject land. The land currently in the City of Centralia which adjoins to the subject land is in the R–1 Zone District for residential use, including vacant, residentially-zoned land suitable for residential development.

The names and addresses of all of the property owners having a fee interest in the land were identified and notice of a public hearing to be held regarding the proposed annexation was mailed to each individual property owner. Notice of the hearing was also made by publication. On June 18, 1990, a public hearing was held as to the proposed annexation. The city presented its Plan of Intent to annex and provide services to the subject land. Evidence presented supporting the Plan of Intent included a list of major city services presently provided by the city; a proposed time schedule to provide the listed city services to the annexation area; the property assessment level and property tax rate; the way in which the city proposed to zone the land; and the date the proposed annexation would become effective. The Board adopted the ordinance following the public hearing.

Section 71.015, RSMo 1986 provides that, following the public hearing, the municipality seeking the annexation shall file a declaratory judgment action in circuit court seeking judicial authorization for the annexation. The suit shall be a class action, naming the inhabitants of the unincorporated area as defendants. Pursuant to the statute, the City of Centralia filed an action against owners of land located on the unincorporated area. The trial court found that the statutory procedures contained in § 71.015 governing annexation had been satisfied. It also concluded that the City of Centralia would be able to furnish normal municipal services of the city within three years after the effective date of the annexation. These municipal services would be extended on the same basis as

1. Northwest of Centralia, 305 acres of land are to be annexed for industrial purposes. The owners of that land have dismissed their appeal in a companion case, which had been consolidated both in the trial court and on appeal.

currently being offered. The trial court found that the annexation was reasonable and necessary to the proper residential development of the city. Land owners appeal from the trial court's judgment.

### "Fairly Debatable" Standard

First, defendants claim that the trial court erred in entering a judgment declaring that the annexation of the 426 acres for residential purposes is reasonable and necessary because plaintiff failed to show that the reasonableness and necessity of such annexation was fairly debatable. The standard of review applicable to a decision to annex land is whether there is substantial evidence showing that the reasonableness and necessity of the annexation is at least fairly debatable. *City of Ballwin v. Hardcastle*, 765 S.W.2d 324, 328 (Mo.App.1989). Under this standard, the extent of judicial inquiry is whether substantial evidence has been presented by the city to support the determination of its governing body such that reasonable men could differ as to the necessity of the extension. *City of St. Peters v. Shop N' Save Warehouse Foods, Inc.*, 710 S.W.2d 409, 415 (Mo.App.1986). If there is substantial evidence both ways on the issue of annexation, then the legislative conclusion is determinative. *City of Eureka v. Hall*, 687 S.W.2d 917, 921 (Mo.App.1985). Thus, guided by these standards, our inquiry is limited to whether the exercise of legislative powers was arbitrary and clearly unreasonable. *See City of St. Peters*, 710 S.W.2d at 415.

A variety of factors are considered in determining whether the annexation decision was reasonable, which include: (1) a need for residential or industrial sites within the proposed area; (2) the city's inability to meet its needs without expansion; (3) consideration only of needs which are reasonably foreseeable and not visionary; (4) past growth relied on to show future necessity; (5) in evaluating future needs, the extent to which past growth has caused the city to spill over into the proposed area; (6) the beneficial effect of uniform application and enforcement of municipal zoning ordinances in the city and in the annexed area; (7) the need for or the beneficial effect of uniform application and enforcement of municipal building,

plumbing and electrical codes; (8) the need for or the beneficial effect of extending police protection to the annexed area; (9) the need for or beneficial effect of uniform application and enforcement of municipal ordinances or regulations pertaining to health; (10) the need for and the ability of the city to extend essential municipal services into the annexed area; (11) enhancement in value by reason of adaptability of the land proposed to be annexed for prospective city uses; and (12) regularity of boundaries. *City of Ballwin*, 765 S.W.2d at 327–28. In reviewing the decision, no one factor is controlling and each case is decided on the totality of its own facts. *City of St. Peters*, 710 S.W.2d at 415.

Defendants contend that plaintiff failed to show that the reasonableness and necessity of the annexation was fairly debatable. First, they claim that the evidence showed that there was no "spillover" into the area to be annexed. The absence of "spillover," standing alone, is not determinative on the issue of whether the annexation was fairly debatable. The court noted in *City of Des Peres v. Stapleton*, 524 S.W.2d 203, 209 (Mo.App.1975) that the lack of migration from the city to the annexation area does not in and of itself show unreasonableness.

Defendants argue that plaintiff has not shown a need for residential sites within the proposed area. Centralia's City Administrator, Lynn Phillip Behrns, testified at trial that the annexation area is in the direction of the population growth for Centralia. Donald Bishop, a real estate broker, testified that there is a high demand for homes and not enough supply for the demand in the city. He stated that there was a high demand for rental property but no lots on which to build rental property. He characterized the real estate market in Centralia as "hot," stating that no new houses are sitting unsold and the housing demand has caused builders to tear down existing buildings to build new residential property. This testimony concerning the current demand for residential property was unrebutted.

Defendants contend that with vacant land within the city suitable for residential development, plaintiff is able to meet its needs without expanding. However, a city is not prohibited from annexing adjacent land

728 ■

merely because the city contains undeveloped tracts within its present boundaries. *City of Eureka,* 687 S.W.2d at 923. No requirement exists that a city must utilize all vacant land before it can expand its boundaries. *Id.* Defendants further argue that the trial court's finding that only 50 to 55 acres of vacant, residentially-zoned, developable land existed in Centralia for desirable and suitable residential development was against the weight of the evidence. Mr. Bishop testified that of the 150 acres of vacant land currently located in Centralia, various sections were not suitable for residential development. One area containing ten acres was located in a flood plain. Other areas were near undesirable facilities, including a palette factory, and an auto part or body shop business. Other tracts of land were too small to be considered desirable for development. Mr. Bishop concluded that there were approximately 50 to 55 acres of desirable, suitable, vacant land for residential development in Centralia. Defendants offered no evidence to the contrary. Thus, this finding was not against the weight of the evidence.

■ Also, defendants contend that the trial court's finding that the desirable residential land within the city may be fully developed within four or five years was not supported by substantial and competent evidence. The trial court's finding on this point was based on Mr. Bishop's testimony. Mr. Bishop testified that given the state of the economy and real estate market at that time, and assuming that the houses were built on one-third acre lots, which was the trend of recent construction in Centralia, it would take only four or five years to develop the vacant land. The trial court's finding on this point was supported by substantial and competent evidence.

■ Defendants claim that plaintiff has failed to show future necessity since Centralia's population has decreased over the years. There was evidence that the population of Centralia had declined from 3,618 in 1970 to 3,414 in 1990. This factor is only one among many others to be considered. Although it is true that the population has decreased over the last twenty years, there was evidence that Centralia has experienced other kinds of

growth. The total assessed valuation of real and personal property has increased from approximately $12,000,000 in 1980 to $19,-000,000 in 1992. Sales tax revenues have also increased over the last five years. A.B. Chance Co., the principal employer in Centralia, increased its employee census from 984 in 1970 to 1,170 in 1992. In light of some indications of growth in and around Centralia, the population decrease of 204 persons from 1970 to 1990 is not determinative of reasonableness.

Another factor considered in determining whether the annexation was necessary and reasonable is the beneficial effect of uniform application and enforcement of municipal zoning ordinances in the city and in the annexed area. The parties agree that Centralia and Boone County zoning regulations are very similar. One difference is that Centralia requires mobile homes to be located in mobile home parks or subdivisions, while Boone County merely requires that mobile homes be on a minimum five acre tract. The parties agree the evidence is relatively neutral on the issue of the beneficial effect of uniform application and enforcement of municipal building, plumbing and electrical codes and also the beneficial effect of uniform application and enforcement of municipal ordinances or regulations pertaining to health.

Another factor to be considered is the need for, or the beneficial effect of, extending police protection to the annexed area. Centralia claims that the annexed area will benefit from the city's police and fire protection. Officers patrolling the area would be looking for grass fires, roadside trash dumping and vandalism to the land by four-wheel vehicles. Officers would be able to respond to the area within five minutes or less. Evidence presented showed that in the past, Boone County Sheriff's Department has taken between 20 and 45 minutes to respond to calls near the area. Additionally, the fire department can provide a quicker response with more fire equipment and firefighters than Boone County. Centralia is also able to extend a water distribution system into the area to be made available to the Centralia Fire Department. Thus, the evidence adduced shows

that police and fire protection to the annexed area by Centralia would be superior to that furnished by the county.

John Kirby, an appraiser, testified that if the area was annexed, it would have an enhanced value of between 10 and 20 percent over its value currently. The trial court made the same finding. Defendants claim that Mr. Kirby's testimony was not credible or substantial as a matter of law in that it was based on only one local "pairing" of sales, which sales were not comparable because the "in limits" sale involved a purchase of land by a developer for development of a subdivision and the "out of limits" sale involved the purchase of land by a homeowner for a country homesite. Mr. Kirby testified that he researched sales data pertaining to vacant land inside and outside Centralia and other communities. He then analyzed the sales data and gathered and retained all sales which had similar physical features and which would have similar highest and best uses. Kirby then paired up the sales data of the land located within and outside the city. He also analyzed other cities' sales data. In all, Kirby analyzed a total of eleven sales. Although the defendant landowners presented testimony to the contrary, the trial court believed Kirby's testimony, which it was free to do. Credibility of witness testimony is left to the sound discretion of the trial court. *United Siding Supply, Inc. v. Residential Improvement Services, Inc.*, 854 S.W.2d 464, 469 (Mo.App. 1993). Thus, the trial court did not abuse its discretion in relying on Kirby's testimony.

Finally, all parties agree, and the trial court found, that annexation of the subject property would not make the city boundaries more regular. The squaring of boundaries is not determinative to an annexation decision. *City of St. Peters v. Kodner Dev. Corp.*, 525 S.W.2d 97, 100 (Mo.App.1975). "Judicial concern with irregular boundaries is bottomed upon desire that the municipality function 'effectively as a unit rather than in several small, unconnected areas which could have problems in providing municipal services.'" *Id.* The evidence illustrates in this case that there will be no difficulty in providing municipal services. The evidence does not show that the function of drawing the boundaries, a legislative function, was exercised arbitrarily. *See Id.*

Defendants cite several Missouri cases to support their contention that the reasonableness and necessity of the proposed annexation did not present a fairly debatable issue. Every annexation case must be decided on its own unique facts. *City of St. Peters*, 710 S.W.2d at 415. The cases cited by defendants in which Missouri courts found annexation inappropriate are all distinguishable on their facts. *See City of Bourbon v. Miller*, 420 S.W.2d 296 (Mo. banc 1967) (the court held that annexation was unreasonable where city proposed to annex two separate, noncontiguous tracts which would increase size of city by 48 percent, when city had 60 acres of vacant residential land (18 percent of total city acreage) and was not in position to provide essential municipal services); *City of Odessa v. Carroll,* 512 S.W.2d 862 (Mo.App. 1974) (the court found annexation was unreasonable where city had 600 acres of undeveloped, residential land (more than one-third of the total municipal land area)); *City of Richmond v. Harmon*, 468 S.W.2d 682 (Mo.App. 1971) (the court found annexation was unreasonable where city, consisting of 1,600 acres, sought to annex 3,280 acres and where 30 percent of total city acreage consisted of vacant land); *City of Mexico v. Hodges*, 482 S.W.2d 545 (Mo.App.1972) (the court held annexation was unreasonable where the annexation would more than double the size of the city and the city already had 801 acres suitable for development (18 percent of the city's total acreage)); *City of Flat River v. Counts*, 596 S.W.2d 446 (Mo.App.1979) (annexation was held unreasonable where more than 36 percent of city was vacant and undeveloped); *City of Butler v. Bock*, 492 S.W.2d 160 (Mo.App.1973) (annexation was held unreasonable where city had 788 acres of undeveloped, vacant land (50 percent of total city acreage)); *City of Cameron v. Stafford*, 466 S.W.2d 115 (Mo.App.1971) (annexation found unreasonable where city had 216 acres of vacant land suitable for residential development (15 percent of total city acreage)).

The evidence presented by City of Centralia created a fairly debatable issue

that the annexation was reasonable and necessary to the proper development of the city. Centralia fully complied with statutory authority in completing its Plan of Intent. The city introduced substantial evidence of its ability and intent to carry out the plan. The evidence presented established that every municipal service will be available to the annexation area within the three-year time period established by § 71.015(4)(b). Thus, a fairly debatable issue was created on whether the annexation was reasonable and necessary to the proper development of Centralia. Point I is denied.

### Costs

Next, defendants claim that the trial court erred in taxing costs against defendants since taxing costs against landowners who are involuntary defendants in an annexation case constitutes an abuse of discretion and costs should be taxed against the municipality forcing the annexation proceedings upon the property owners, just as costs are taxed in the analogous context of condemnation proceedings.

■ In a declaratory judgment proceeding, the trial court has the discretion to award costs as it deems equitable and just. Section 527.100, RSMo 1986; Rule 87.09. Discretionary rulings made by a trial court are presumed correct and the burden rests on the party challenging the ruling to show an abuse of discretion. *Anglim v. Missouri Pacific Railroad Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992). Here, defendants argue that annexation cases are analogous to condemnation cases, and that, therefore, costs should be assessed against the city. Defendants omit any authority for their argument and we have found none. Thus, defendants have failed to show an abuse of discretion by the trial court's award of costs. Point II is denied.

### Gerrymandering

Finally, defendants contend that the trial court erred in entering judgment in favor of plaintiff based on a finding that plaintiff had fully complied with § 71.015, commonly

2. The term "gerrymander" is defined as "[a] name given to the process of dividing a state or other territory into the authorized civil or political divisions, but with such a geographical ar-

known as "the Sawyer Act," because plaintiff's exclusion of at least four residences immediately adjoining the area to be annexed constitutes gerrymandering[2] and, thus, defeats and skirts the intent and purpose of § 71.015(6) and (7) in that the dual election requirements and the deannexation protections in the statutes are avoided since there are no residents in the area to be annexed as selected and defined by plaintiff.

■ Nothing in "the Sawyer Act" prohibits a proposed area of annexation from consisting of vacant land. In *City of St. Peters*, 710 S.W.2d at 413 n. 3, the court specifically stated that a proposed annexation is not improper merely because the area has no resident voters. The trial court found that the area to be annexed satisfied the only configuration requirement contained in the annexation statute when it found that the land is adjacent to and contiguous with the existing Centralia corporate limits and the common boundary length is more than 15 percent of the perimeter of the subject area. Defendants cite no authority for their argument and we have found none. Thus, the trial court did not err in entering judgment in favor of plaintiff. Point III is denied.

The judgment is affirmed.

rangement as to accomplish an ulterior or unlawful purpose...." Black's Law Dictionary 618 (5th ed. 1979).