**CITY OF PACIFIC, Plaintiff/Respondent,**

v.

**METRO DEVELOPMENT CORP.,**
**et al., Defendants/Appellants.**

No. 66890.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 14, 1996.

Briegel, Baylard, P.C., David L. Baylard, Union, for appellants.

Hansen, Stierberger, Downard & Melenbrink, Jonathan L. Downard, Union, for respondent.

PUDLOWSKI, Judge.

This appeal concerns the City of Pacific's efforts to expand its municipal girth via the involuntary annexation procedures of RSMo § 71.015. Edwin and Caroline Upchurch, appellants herein, reside in an unincorporated section of Franklin County which lies within the area respondent Pacific originally sought to annex. However, appellants' property was removed from the ambit of the annexation on the day of trial when respondent dismissed appellants from the case. The trial court accepted appellants' dismissal and, after respondent's brief presentation of evidence, declared a judgment that respondent had satisfied the statutory conditions precedent to annexation. This judgment cast appellants on an island of unincorporated Franklin County, surrounded by the City of Pacific. It is this result, and the processes which yielded it, upon which we focus our attention.

Involuntary annexation is governed by § 71.015, and is accomplished in three stages, the first two of which are relevant to this appeal. The initial stage is one of planning and dissemination of information. The gov-

erning body of the city, presumably after researching the question, proposes an ordinance setting forth, inter alia, a "Plan of Intent" for the provision of municipal services to the region to be annexed. The ordinance, including the Plan of Intent and evidence which supports it, is then presented to the residents of the area to be annexed at a public hearing.

The second stage of the § 71.015 process involves judicial review of the annexing city's efforts in the first stage. Specifically, the city brings an action for declaratory judgment. This lawsuit is to be a class action, in conformance with § 507.070 and requires the city to prove, inter alia, that it has the ability to furnish the annexed area with normal municipal services within a reasonable time, not to exceed three years after the annexation is to become effective. The final stage of the § 71.015 process, in which the question of annexation is submitted to the voters, is not at issue in this appeal.

The facts of the present case which are necessary to its resolution can be condensed as follows: Having decided that growth pressures in the City of Pacific made annexation of more territory appropriate, and apparently cognizant of the dictates of § 71.015, respondent hired a consulting firm to assemble a Plan of Intent. Although the exact sequence is cloudy, an engineer was also hired to address the logistics of extending water and sewer service to the region. Respondent then held its public hearing on August 17, 1993. The transcript from that hearing demonstrates that while the engineer had started work on the plans for providing water and sewer service to the annex area, city officials were unable to answer many of the questions put to them by concerned residents. To wit, officials could not say what the plans would be for the installation of a sewer system for the Orchard Estates and Indian Hills neighborhoods; they could not state how much the residents would have to pay for sewer connections, if anything; they conceded that the topographical maps prepared by the engineer were merely preliminary and were not ready for public inspection; and, the engineer himself stated that none of the plans for the area west of Highway N were defined to any real extent. No time schedule for installation of sewer or water service was presented, other than the statement that such services would be in place within three years of annexation. While there was some discussion of a second public hearing, and the record does indicate that a second informal meeting was held, no transcript from this meeting was submitted.

Respondent filed its petition for declaratory judgment on February 4, 1994, apparently naming all landowners and residents of the annex area as defendants. Fourteen named defendants, including appellants, filed answers; appellants' answer sought dismissal of respondent's petition. Trial of the declaratory judgment action occurred on September 1, 1994. Before trial, apparently in the trial judge's chambers, respondent dismissed appellants and every other defendant who had shown up to contest the matter. Appellants did not make a record in objection to this dismissal. The trial then commenced, with respondent putting on evidence largely duplicative of that adduced at the public hearing. Neither respondent's petition for declaratory judgment, nor the evidence introduced in support thereof, set forth a schedule for the provision of water or sewer service, other than the conclusory assurance that such would be accomplished within three years after annexation. The only evidence of respondent's ability to provide these services was the statement of Ed Gass, Commissioner of Public Works, that he believed it could be done within three years. Respondent seems to be under the impression that certain exhibits, including the resolution in favor of annexation, the proposed annexation ordinance, and the Plan of Intent, were introduced as evidence at trial. They were not. We note, however, that none of these documents bear on the issues of 'ability to provide services' and 'time schedule for provision of services' with any more force than Gass's testimony. At the conclusion of respondent's case, the trial court granted judgment in its favor.

On September 2, 1994, the day after trial, appellants barraged the trial court with motions to set aside the dismissal, to intervene of right, and to set aside the judgment. These motions were denied.

*Standing*

On Appeal, respondent's principal argument in defense of the trial court's judgment is that appellants lack standing to contest it. Specifically, respondent contends that because judgment had been entered prior to appellants' attempted intervention, there was no case in which to intervene; that because appellants were not parties against whom judgment was entered, they may not move to set aside that judgment; and that a voluntary dismissal is not appealable by the party dismissed, in any event. These general rules, competently enumerated by respondent, are not dispositive in this case.

■ Post-judgment intervention is possible where substantial justice requires it and where it inflicts no prejudice on any other party in the case. *Meyer v. Meyer*, 842 S.W.2d 184, 189 (Mo.App.1992). We believe this test is met in this case. Because we also find that the trial court erred in entering judgment for respondent, no prejudice will exist by appellants' intervention. For substantially the same reason, we decide that appellants have standing to appeal their dismissal from the case at trial.

■ It is true of course that one may not generally appeal a judgment to which it was not a party. But the declaratory judgment phase of the involuntary annexation process is a rather unique proceeding, in that the municipal plaintiff is not seeking redress for any harm it has suffered, but is instead seeking judicial approval of its efforts to comply with § 71.015. In arguing that appellants may not contest the trial court's judgment, respondent essentially reasons that the only parties affected by the annexation are those persons who stand to be annexed. This is not so. In *Martee v. City of Kennett*, 784 S.W.2d 621 (Mo.App.1990), the court held that the plaintiff, whose land was surrounded on three sides by the annex region, had standing to challenge the city's adherence to the statutory annexation requirements even though he neither resided in nor owned property in the area that was the subject of annexation. The plaintiff in *Martee*, like the appellants in the instant case, had a specific, legally cognizable interest in the subject of the governmental action, which was directly affected thereby, and, therefore, had standing to contest that action. *See Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397, 400 (Mo. banc 1986). Accordingly, appellants have standing to bring this appeal.

*Requirements of Section 71.015*

■ The function of this court in reviewing a declaratory judgment authorizing a city to proceed with annexation is to review the case de novo on questions of law. *City of Ash Grove v. Davis*, 418 S.W.2d 194, 196 (Mo.App.1967). We will affirm the trial court's judgment if respondent has carried its burden of proof on each element of § 71.015. *City of Jefferson v. Smith*, 543 S.W.2d 547, 549 (Mo.App.1976).

Appellants contend that the trial court's ruling in favor of respondent must be reversed for three reasons. First, appellants assert that the public hearing which respondent conducted on August 17, 1993, did not satisfy § 71.015.1(4)(b) in that the Plan of Intent, and evidence in support thereof, offered by respondent did not contain an adequate time schedule for the provision of municipal services to the proposed annex area. Secondly, appellants argue that respondent violated § 71.015.1(5)(c) because its petition for declaratory judgment did not state facts showing its ability to furnish normal municipal services to the annex area within a reasonable time, not to exceed three years. Finally, appellants (in effect) challenge the reasonableness of the annexation map resulting from appellants' dismissal and approved by the trial court. These attacks will be taken up in turn.

■ In evaluating respondent's compliance with § 71.015, we inquire initially into the sufficiency of respondent's efforts at the public hearing. It is undisputed that respondent did present a Plan of Intent in which it promised to provide, inter alia, water and sewer service to the entire region to be annexed within three years. Respondent insists this is all that was required of it. To illustrate why respondent's reasoning is defective, a quotation of § 71.015.1(4)(b) is use-

ful; it requires the annexing municipality to present—

A proposed time schedule whereby the city ... plans to provide such services to the residents of the proposed area to be annexed within three years from the date the annexation is to become effective.

Respondent apparently glosses the phrase "time schedule" to mean "promise" or "assurance," so that no further detail is required beyond the three year maximum. This interpretation flies in the face of both logic and the denotative meaning of the words selected by the legislature. The most plausible reading of this provision is that the annexing city must propose a plan detailing the time frame under which municipal services will be provided to the residents of all the subdivisions and other tracts of land within the subject area. This section clearly contemplates that some residents will likely enjoy these services before others, and tacitly approves such an arrangement, as long as all residents have service within the three year maximum.

■ Although not immediately apparent on its face, the implicit concern of this provision is that the affected residents be given some assurance early in the annexation process that planning has occurred. As this court has recognized, planning is the keystone of the legislative process in annexation. *City of Cape Girardeau v. Frank*, 637 S.W.2d 786, 788 (Mo.App.1982). A proposed time schedule which addresses the provision of services for each subdivision and other tracts of land of the annex area evidences planning in a way that the naked assurance that "all will be well within three years" does not. Nor does our reading of this provision impose any dire burdens on the annexing city or hamstring it at a premature stage of the process. The time schedule we have outlined would not be expensive or time-consuming to assemble, and since it is merely a proposal, variance from it for good cause at a later time is entirely acceptable. We hold that respondent failed in its efforts to comply with § 71.015(4)(b).

■ Appellants' second attack on respondent's annexation undertaking is that respon-

dent's petition for declaratory judgment failed to state facts showing its ability to furnish water and sewer services to the subject region within three years, in contravention of § 71.015.1(5)(c). Respondent's position is that merely alleging that it had this ability, in the petition itself, in the Board of Alderman's resolution, and through the testimony of the Public Works Commissioner, was sufficient to satisfy the statute. Indeed, official statements of a city's ability to furnish municipal services can constitute important evidence on this point. *See City of Butler v. Kuecker*, 559 S.W.2d 575, 580 (Mo. App.1977). Neither respondent's petition, nor the materials submitted therewith, contained factual allegations that, respondent was financially and technically able to provide water and sewer services within three years.

City's petition merely contained the conclusory allegation that "City ... has the ability to furnish normal municipal services to the area within a reasonable time not to exceed three years after the annexation is to become effective." However, appellants filed no motion for more definite statement under Rule 55.27(d). The evidence submitted by City at trial on this issue was the testimony of three city officials. The City Clerk Administrator testified it was "city's goal to comply with ordinances and provide necessary services within three years of the date of proposed annexation." The Commissioner of Public Works testified he "believes city can provide services within the three year time period." The Police Chief testified proper police service could be provided to the area. However, city made no evidentiary showing concerning its technical or financial ability to furnish sewer services to the residents of the annexed area.[1] These were issues which had been the subject of many unanswered questions at the public hearing prior to the filing of City's petition. The record reflects a lack of evidence of the City's financial and technical ability to provide sewer services to the residents of the area within a reasonable time, not to exceed three (3) years after the annexation was to

---

1. Nor was there any showing by City of any plan to obtain state or federal financial assistance, or landowner assessments to assist in furnishing sewer services.

become effective. Accordingly, the judgment that City satisfied the dictates of § 71.015.1(5)(c) is not supported by substantial evidence. The relevant precedents concur with such a finding.

In *Cape Girardeau*, a city attempting involuntary annexation argued that it had satisfied the requirements of § 71.015 by alleging that it had the ability to provide municipal services, although it had not based these allegations on a thorough investigation of its ability to do so. Denouncing the annexation resolution which contained these allegations as an arbitrary exercise of legislative power, this court held that under § 71.015, a city must give "some modicum of consideration to the mechanics and costs of extending services prior to the filing of the petition for declaratory judgment." *Id.* at 788.

■ Although we do believe respondent did more investigation into the technical aspect of providing sewer and water services than was the case in *Cape Girardeau*, it has utterly failed in § 71.015.1(5)(c)'s other requirement: facts demonstrating the financial ability to furnish the required services. Review of the cases, in which an annexing city's ability to provide municipal services was challenged and found to have been sufficiently demonstrated, indicates that the city must adduce facts of its financial ability. *See City of Perryville v. Brewer*, 557 S.W.2d 457 (Mo. App.1977) (analyzing estimated capital expenditures for provision of services to annexed area, vis-a-vis city's tax base and bonding capacity); and *City of Eureka v. Hall*, 687 S.W.2d 917 (Mo.App.1985) (court able to conclude from the evidence that the city's financial condition is sound and will be strengthened by annexation). It is true, that the analysis of this issue in some of the cases is so cursory that it is impossible to tell whether the evidence of financial ability was presented or not. However, even in *City of Butler*, the relevant precedent which scrutinized the annexing city's efforts the least, there was evidence that the city had earmarked Federal and State funds for a new sewer system. *City of Butler*, 559 S.W.2d at 580. We, therefore, hold that city's failure to state facts or introduce evidence demonstrat-

ing an ability to provide municipal services to the subject area, there is no substantial evidence of compliance with § 75.015.1(5)(c).

Appellants' final assault on respondent's beleaguered annexation effort concerns their dismissal at trial. Appellants suggest that the dismissal should not have been countenanced by the trial court because exclusion of the opponents of annexation from the declaratory judgment action resulted in unfair and inadequate representation of the class affected by the annexation, in violation of RSMo § 507.070, adherence to which is mandated by § 71.015.1(5)(c). The problem with appellants' reasoning on this point is that § 71.015.1(5)(c) specifically defines the class which is to be adequately and fairly represented as the inhabitants of the unincorporated area which is the subject of the annexation proceeding. Having been dismissed, appellants were no longer part of this group. Appellants' argument would be correct if respondent's compliance with § 507.070 was measured from the time the declaratory judgment petition was filed, since appellants were residents of the subject region at that time. However, this is not the law. *See Young v. Mayor, Council and Citizens of City of Liberty*, 531 S.W.2d 732 (Mo. banc 1976) ("legislature intended to require city to comply with statute with respect to area ultimately annexed"). We think that, as a general matter, cities should be free to voluntarily dismiss parties to an annexation proceeding prior to trial of the declaratory judgment action, where doing so is reasonable.

■ The real problem with the eleventh hour dismissal in this case is that it yielded an unreasonable geographic result. Respondent's dismissal of appellants leaves appellants marooned on an unincorporated island. This situation is not only detrimental to appellants, but could very easily produce countless problems for the City of Pacific. It has long been recognized by the courts of this state that regularity of boundaries is a consideration in evaluating the reasonableness of an annexation. *City of St. Peters v. Kodner Development Corp.*, 525 S.W.2d 97, 100 (Mo.App.1977); *City of St. Ann v. Spanos*, 490 S.W.2d 653, 656 (Mo.App.1973). It has been stated that while distorted bound-

aries weigh heavily against the reasonableness of an annexation, they will not destroy annexation in themselves. *City of Flat River v. Counts,* 596 S.W.2d 446, 450 (Mo.App. 1979). However, we consider the situation where the newly-formed boundaries completely surround unincorporated land to be a special subset of the "irregular boundaries" cases. While there is no Missouri case in point, this situation was addressed by the Tennessee Supreme Court, which branded the resulting geography an "archipelagic monstrosity," intolerable in all but the most compelling circumstances. *City of Kingsport v. State ex rel. Crown Enterprises,* 562 S.W.2d 808, 814 (Tenn.1978). The reductio ad absurdum of respondent's practice is unthinkable fragmentation and municipal chaos, consequences which we find unacceptable. We declare respondent's current annexation map unreasonable and violative of § 71.015.

### Attorney's Fees

Appellants also urge this court to award them their attorney's fees. An award of attorney's fees is only appropriate where it is provided for by contract, by statute, or where special circumstances weigh in favor of such an award. *Washington University v. Royal Crown Bottling Co.,* 801 S.W.2d 458, 468 (Mo.App.1990). Appellants cite to Rule 87.09 and § 527.100 RSMo as statutory authorization for this award. These provisions allow a trial court to award "costs" to a party where such an award would be "just and equitable" in declaratory judgment proceedings. However, the Missouri Supreme Court has held these provisions, in and of themselves, do not stand as statutory authorization for awarding attorney's fees. *Mayor, Councilmen, and Citizens, Etc. v. Beard,* 636 S.W.2d 330, 331 (Mo. banc 1982). Seemingly aware of this, appellants assert that respondent is guilty of bad faith conduct in dismissing them from the annexation proceeding and that such conduct brings this case within the "special circumstances" exception to the general attorney's fees rule. In support of their contention appellants make reference to *Temple Stephens Co. v. Westenhaver,* 776 S.W.2d 438 (Mo.App.1989), a case in which attorney's fees were awarded to a party who had incurred them as a result of the opposing party's knowingly wrongful conduct. *Id.* at 443. In the present case, there is no question that appellants incurred attorney's fees that they would not have but for respondent's deliberate conduct; however, there is no evidence that respondent acted in bad faith or with a wrongful purpose. Hence, appellants have not proven "special circumstances" entitling them to an award of attorney's fees, and their request for such an award is rightly refused.

For the foregoing reasons, the trial court's judgment in favor of respondent is reversed in part and affirmed in part.

AHRENS, P.J., concurs.

GRIMM, J., concurs in result only.