**CITY OF LAKE WINNEBAGO,**
Respondent,

v.

Steven F. GOSEWISCH, Beverly A.
Gosewisch, David M. Magers and
Rhonda L. Magers, Appellants.

No. WD 51495.

Missouri Court of Appeals,
Western District.

Oct. 22, 1996.

Thomas J. Walsh, Lee's Summit, for appellants.

James L. Campbell, Shughart Thomson & Kilroy, P.C., Kansas City, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Defendants–Appellants argue that the trial court erred in issuing its declaratory judgment authorizing the City of Lake Winnebago to proceed with its annexation of Defendants' property under the involuntary annexation procedures set out in Section 71.015 RSMo 1992. We find that the City's Amended Plan of Intent to annex the property complied with Section 71.015, that we can properly consider the propriety of the Amended Plan despite the fact that a second public hearing was not held once the original Plan was amended, and that the trial court did not abuse its discretion in finding that the annexation was reasonable and necessary. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lake Winnebago (the City) is a Fourth–Class City located in Cass County. The boundary of the City is an irregular shape surrounding Lake Winnebago, a Class A recreational lake owned by a private homeowners' association. The City of Lake Winnebago contains approximately 1,300 lots, of which approximately 339 are currently developed. As shown on the schematic diagram below, the City extends north to the Jackson County line. It is bordered on the north by the cities of Lee's Summit and Greenwood and on the east and south by unincorporated areas of Cass County. On the west, it borders on Lee's Summit and small unincorporated portions of Cass County.

Defendants–Appellants Steven F. and Beverly A. Gosewisch and David M. and Rhonda L. Magers, respectively, own contiguous lots of land in one of the just-mentioned unincorporated areas of Cass County which lie between the City of Lake Winnebago and the City of Lee's Summit. Their property is labeled "Parcel 2" on the diagram below. The Gosewisches own slightly more than seven acres, and the Magers own approximately eight and one-half acres. Each lot contains a house, which serves as the owners' principal residence, as well as several outbuildings. The Magers also raise dogs, horses, and chickens on their land.

As the diagram demonstrates, Defendants' lots are located in an unincorporated area of Cass County; their land is in effect an island bounded on the north, west, and south by the City of Lee's Summit, and on the east by the City of Lake Winnebago.

While their land is bordered on three sides by Lee's Summit, that city has indicated it is not interested in annexing Defendants' land. Since approximately 1990, however, the City of Lake Winnebago has indicated an interest in annexing the land in question, which it labels Parcel 2, as well as six other parcels of land which are contiguous to its current boundaries. *See* Diagram.

Lake Winnebago presented evidence of two principal reasons why it wants to annex these seven parcels of land: (1) to prevent pollution of the Lake Winnebago watershed by bringing unincorporated land within the watershed into the City; and (2) to control the zoning of the area to be annexed, so as to prevent inappropriate commercial development at the edges of the City, and particularly near a highway exit which is near the entrance to Lake Winnebago.

In preparation for the annexation, the City prepared an initial Plan of Intent that related

to the seven parcels. It called for the City to provide most existing city services to the annexed areas, including police protection, sewer service, and the franchise services of electricity, gas, telephone, and cable television. The Plan did not call for any change in the provision of fire protection or water service to the annexed areas.

On December 9, 1992, the City Board of Aldermen passed a resolution of intent to annex the tract designated as Parcel 1, and the tract designated as Parcel 2, containing the two lots owned by the Gosewisches and Magers. The Board held a public hearing on the proposed annexations on January 13, 1993. At this hearing, the City discussed the proposed annexation with the property owners.

After the hearing, the Board enacted ordinances proposing the annexation of Parcels 1 and 2. Parcel 2, which is at issue here, was proposed in Ordinance No. 427. As required by Section 71.015, the City then filed a declaratory judgment action on January 20, 1993, seeking authorization for the annexation.

After that action was filed the City completed its annexation of Parcel 1, and it plans to continue annexation of Parcels 3–7 as soon as annexation of Parcel 2 is complete. Sometime in early 1994, the City also amended the Plan of Intent as to Parcel 2. Because the original Plan of Intent applied to other parcels also, it did not separately list the services the City would provide to Parcel 2 nor the taxes the City would impose on that parcel. The Amended Plan of Intent specifically outlines these services and taxes. The City stated in the Amended Plan that it would maintain the road used as a driveway to access the Gosewisches' and Magers' lots, would arrange for sewer service, and would provide police protection, water service, refuse collection, and fire and ambulance service. The Amended Plan also stated that the City would rezone the lots to a residential classification and listed the City's tax rates and assessed valuations of the lots. At trial, the City further offered evidence that it

would chip and seal the county gravel roads, once the annexation was complete.

The trial court found that the annexation was reasonable and necessary and issued its declaratory judgment in favor of the City. The Gosewisches and the Magers appeal.

## II. *STANDARD OF REVIEW*

■ In reviewing the decision to annex, the only issue is whether there is substantial evidence that the reasonableness and necessity of the annexation are fairly debatable. As the Supreme Court stated the test in *Binger v. City of Independence*, 588 S.W.2d 481 (Mo. banc 1979), the decision whether to approve annexation:

> does not depend on whether a city establishes by a preponderance of the evidence that such annexation is reasonable and necessary or that citizens establish by a preponderance of the evidence that such annexance is unreasonable and unnecessary. There is not in these cases a burden of persuasion by a preponderance of evidence. Instead, the test is whether the evidence shows that the question of reasonableness and necessity of the annexation was fairly debatable.

*Id.* at 485. If there is substantial evidence on both sides of the issue, we must defer to the council's judgment. Therefore, the extent of our inquiry is limited to whether the City's action was arbitrary and clearly unreasonable.[1]

## III. *ADEQUACY OF THE CITY'S PLAN OF INTENT*

### A. *Statutory Annexation Procedure.*

Defendants first argue that the annexation must fail because the City failed to comply with the statutory requirements for annexation.

Section 71.015, known as the Sawyers Act, describes the procedure to be followed when a city seeks to involuntarily annex an area. First, the city must propose an ordinance stating, among other things, that the city has developed a "Plan of Intent" to provide the annexed area with services. § 71.015.1(2)(c)

---

1. *See, e.g. City of Ballwin v. Hardcastle,* 765 S.W.2d 324, 326 (Mo.App.1989); *City of St. Pe-* ters *v. Shop N' Save Warehouse Foods, Inc.,* 710 S.W.2d 409, 415 (Mo.App.1986).

RSMo.1986 Supp.1992.[2] The Plan must contain a list of major services presently provided by the city. § 71.015.1(4)(a). The statute lists as examples police and fire protection, water and sewer systems, street maintenance, parks and recreation, and refuse collection. *Id.* The Plan of Intent must also include a proposed time schedule to provide those services to the annexed area. It must also state the level at which the city assesses property and the property tax rate, and must set out the proposed zoning classification of the annexed area. § 71.015.1(4)(b)–(d). Finally, the Plan must state when the annexation will become effective. § 71.015.1(4)(e).

The procedure outlined in the statute does not require a city to formally adopt the Plan of Intent. Instead, the city must present the Plan and evidence in support of it at the public hearing on the ordinance. § 71.015.1(3), (4). If, after the hearing on the ordinance, the governing body votes to annex, the city must file an action seeking a declaratory judgment authorizing annexation. § 71.015.1(5).

### B. *Annexation Procedure Followed by Lake Winnebago.*

Defendants contend that Lake Winnebago failed to follow the statutory requirements for annexation in regard to preparation of its original Plan of Intent, adopted by the City on January 13, 1993. That Plan, they say, was not in compliance with the statute because it failed to list bonded indebtedness, failed to adequately list major services it would provide in the annexed area, and failed to include the proposed tax rate, level of assessment and proposed zoning of the area to be annexed. They argue that compliance with the requirement to list these matters in the Plan of Intent is mandatory, and that failure to do so precludes annexation.

We disagree with Defendants that the original Plan was required to set out the City's bonded indebtedness. Nothing in the statute requires it to do so. We also disagree that the original Plan inadequately set out the services to be provided. The statute only requires a listing of services currently provided in the City which the City plans to provide in the annexed area. It is uncontested by the parties that the Plan of Intent included information regarding fire protection, police protection, water service, sewer service, and the franchise services for electricity, gas, telephone, and cable television. While Defendants claim that the Plan should also have included reference to parks and recreation, the evidence showed that the City does not provide parks and recreation services. It therefore had no duty to list them in its Plan of Intent.

Defendants are correct, however, that the original Plan was deficient in failing to include information as to the proposed tax rate, level of assessment, and future zoning of the area to be annexed. These omissions appear to have resulted from the fact that the original Plan covered all seven parcels proposed to be annexed. We do not need to determine whether these omissions, if left uncorrected, would have precluded annexation, as claimed by Defendant, for during the course of the declaratory judgment action the City prepared an Amended Plan. The Amended Plan did adequately set out the tax and assessment rates and the potential zoning contemplated in Parcel 2. It also set out additional services which the City planned to provide to Parcel 2, including providing sewer hookups and more prompt police responses.

Defendants recognize that an Amended Plan was ultimately prepared, but say that the City was obligated to hold a second public hearing and formally adopt that Amended Plan. Because the City failed to hold a second hearing on the Amended Plan, and to formally adopt it, Defendants in effect argue we should ignore the Amended Plan in determining whether statutory procedures were satisfied.

We disagree that the City was required to hold a second public hearing after amending the Plan. As noted above, Section 71.015 does not require a city to adopt a Plan of Intent by ordinance. Rather, it requires simply that a city must propose an ordinance, and that the ordinance must indicate that the

**2.** All statutory references are to RSMo 1986 and Supp. 1992 unless otherwise indicated.

city has developed a Plan of Intent for the area to be annexed. The city must then hold a hearing *on the ordinance*, at which the Plan will be explained. After the hearing, the city must file a declaratory judgment action to seek approval *of the ordinance proposing annexation*, not the Plan.

Nothing in the statute says that a city cannot change the Plan following the public hearing, or that a city must adopt a new ordinance or hold a new hearing if it does so. We think that to impose such a requirement would be inconsistent with the purposes of requiring a public hearing in the first instance. While one purpose of such a hearing is to present the Plan to the public, another related purpose is implicitly to gain public feedback concerning the Plan. It is to be expected that on many occasions that feedback will lead to modifications to the Plan so as to improve it. Under Defendants' approach, any such modification would require a city to begin again with a new resolution and new Plan, and to hold a new hearing. Yet, the statute does not provide that if modifications are made following the public hearing that a new hearing must be held. We will not imply such a requirement from the legislature's silence. *See City of Lebanon v. Richardson*, 894 S.W.2d 699 (Mo.App. 1995).

Moreover, even were a city required to hold a second hearing, under *Richardson* its failure to do so would not result in reversal of the order below unless defendants could show prejudice as a result of the failure to hold such a hearing. *Id.* In that case, as here, after the city prepared its Plan of Intent and presented it at a public hearing, it amended the Plan to decrease the area sought to be annexed. It failed to hold a second public hearing following this amendment.

The Court of Appeals nonetheless affirmed the trial court's order granting authority to annex. It rejected the argument that the failure to hold a second hearing precluded annexation of the land on the basis that the change in the area to be annexed did not have a negative impact on defendants' own land, and that its position was not in any way negatively affected by the amendment. Because the court thus concluded that it was "unable to find any demonstrable prejudice to Appellant by the failure to hold a second public hearing after the proposed annexation area was decreased," it approved the annexation. *Richardson*, 894 S.W.2d at 702.

In so holding, *Richardson* relied on *City of St. Peters v. Shop N' Save Warehouse Foods, Inc.*, 710 S.W.2d 409 (Mo.App.1986), which implicitly held that procedural violations must result in prejudice in order to deny authority to annex. In *Shop N' Save*, the landowners claimed that the City of St. Peters had failed to comply with the procedural requirements for annexation by failing to provide adequate notice. The court found that proper notice had been given, but in so doing noted that, even if St. Peters had violated the procedural requirements for notice, the landowners were not prejudiced in any way by the failure, for they had actual notice. *Id.* at 412–14. It thus approved the annexation.[3]

■ So too here, Defendants have failed to show any prejudice as a result of the amendments to the Plan. To the contrary, the Amended Plan includes all of the information which Defendants say was needed and should have been included in the original Plan. It also promises the provision of services to Defendants which were not included in the original Plan. The amendments to the Plan benefitted rather than prejudiced Defendants' property. The Amended Plan adequately complied with Section 71.015. This Point is denied.

---

3. Defendants note that *Martee v. City of Kennett*, 784 S.W.2d 621, 624 (Mo.App.1990), held that if objection is made to voluntary annexation under Section 71.012 then Section 71.012.1(3) provides that "the provisions of sections 71.015 ... *shall* be followed" (emphasis added). They say that this means that voluntary annexations *must* exactly comply with Rule 71.015 where there are objections, and that involuntary annexations should be required to do so also. Defendants misread the statute. While it says that the provisions of Section 71.015 must be followed, it does not address the issue whether a failure to do so will invalidate the annexation in the absence of prejudice. We find that it will not do so here.

## IV. REASONABLENESS OF DECISION TO ANNEX

Defendants also argue that the declaratory judgment determination in favor of the City should be reversed because the City did not establish that the annexation was reasonable and necessary. In declaratory judgment actions for annexation, the City does not have the burden to prove by a preponderance of the evidence that the annexation is reasonable. Its burden is simply to proceed with the evidence. If that evidence shows that the reasonableness and necessity of the annexation are fairly debatable, then we will defer to the legislative judgment of the City to approve the annexation, even if there is also substantial evidence not favoring annexation.[4]

In support of their argument that the annexation was unreasonable and unnecessary, Defendants contend that the City will not provide them with any needed additional services after annexation. They thus argue that they will receive no benefit from the proposed annexation, but that they will be harmed by the annexation in that they will be subject to City taxes and regulation. They suggest that because in their estimation the burdens of annexation outweigh its benefits, the court is precluded from finding that the annexation is reasonable and necessary.

■ For the reasons discussed below, we do not agree that the annexed area will receive no benefits from the annexation. Further, we do not agree that we determine the City's right to annex by viewing the reasonableness of the annexation exclusively from the point of view of whether those in the area to be annexed wish to be annexed. If this were the case, the legislature would not have provided that annexation will be permitted if approved by a two-thirds vote of those in the annexing city, even if annexation was not approved by voters in the area to be annexed. § 71.015.1(6). On the other hand, the mere desire for the land by the residents of the annexing area is also an inadequate basis on which to approve annexation. Rath-

er, the interests of those in the area to be annexed and of those in the annexing area are properly considered in the context of a wide variety of relevant factors, including:

(1) a need for residential or industrial sites within the proposed area; (2) the city's inability to meet its needs without expansion; (3) consideration only of needs which are reasonably foreseeable and not visionary; (4) past growth relied on to show future necessity; (5) in evaluating future needs, the extent to which past growth has caused the city to spill over into the proposed area; (6) the beneficial effect of uniform application and enforcement of municipal zoning ordinances in the city and in the annexed area; (7) the need for or the beneficial effect of uniform application and enforcement of municipal building, plumbing and electrical codes; (8) the need for or the beneficial effect of extending police protection to the annexed area; (9) the need for or the beneficial effect of uniform application and enforcement of municipal ordinances or regulations pertaining to health; (10) the need for and the ability of the city to extend essential municipal services into the annexed area; (11) enhancement in value by reason of adaptability of the land proposed to be annexed for prospective city uses; and (12) regularity of boundaries.

*City of Centralia v. Norden*, 879 S.W.2d 724 (Mo.App.1994).

■ Under *Norden*, the presence or absence of any particular factor is not determinative, and reasonableness must be determined on a case by case basis. *Id.* at 727. The ultimate issue is whether annexation is reasonable to the development of the city. *Beard*, 613 S.W.2d at 651 (Mo.App.1981); *City of Flat River v. Counts*, 596 S.W.2d 446 (Mo.App.1979).

■ In applying this standard we hold that the trial judge did not abuse his discretion in issuing its declaratory judgment authorizing the annexation, for the evidence presented below permitted him to find that

---

4. *Binger v. City of Independence*, 588 S.W.2d 481, 485 (Mo. banc 1979); *City of Ballwin v. Hardcastle*, 765 S.W.2d 324, 326 (Mo.App.1989); *Mayor,*

*Councilmen, & Citizens of Liberty, v. Beard*, 613 S.W.2d 642, 651 (Mo.App.1981).

the reasonableness of the decision to annex was at least fairly debatable.

Considered from the point of view of the area to be annexed, it appears that many of the services that Lake Winnebago will provide are already available to the property from other sources, although there are differences in who will provide some of those services, including trash disposal, public utilities, cable television, and so forth. The record does not indicate that one set of providers of these services is substantially superior to the other. In general, a comparison of the provision of city services before and after the annexation thus seems to be fairly neutral in regard to whether annexation is reasonable or necessary.[5]

This is not true as to all services, however. The City presented substantial evidence showing that it can provide sewer service and hookups to the Defendants' land in place of their septic tanks, and further presented evidence that it will do so at much less than the price that would be charged for such a hookup should the Defendants remain unincorporated and seek to obtain sewer service from the sewer district. This additional service is a potential benefit from annexation which the trial court could properly consider in determining whether the reasonableness of annexation was fairly debatable.

Lake Winnebago also presented evidence that the annexation would provide faster police protection to the area because calls could go more directly to it. It further offered evidence that the police station is located in an area of the City very near the Defendants' property. In addition, annexation would allow the police to undertake regular patrols of the area; they cannot do so while the area is in an unincorporated part of Cass County. While the Defendants say they are satisfied with the police protection they currently receive from the Cass County Sheriff's office, with secondary protection from nearby cities, the added and more efficient police protection that the City could offer after annex-

ation is another factor supporting the finding that annexation is reasonable.[6]

Finally, the City indicated that, if the annexation is authorized, it will chip and seal the road running along the property to be annexed. This would be an improvement over the current gravel surface of the road, and could be considered by the court in determining whether the annexation is reasonable.

On the negative side, the residents of the area to be annexed say that they moved to the area to be free of regulation and that they simply do not wish to be part of a city. In light of the fact that their property is a small, 15–acre island of unincorporated land totally surrounded by the cities of Lee's Summit and Lake Winnebago, however, their desire never to be incorporated into a city does not appear to be realistic in the long run. In any event, it does not in itself provide an adequate basis to find annexation unreasonable. Moreover, the City has assured the residents that their use of the land to raise farm animals, and so forth, may be continued as non-conforming uses after annexation.

The Defendants also point out that the City has plenty of undeveloped land within its boundaries and does not need the land in question in order to expand or have room for reasonably anticipated development and that they will have to pay additional taxes if annexed.[7] In addition, they note that the focus of the City is the Lake, that the Lake and many of the streets are private and closed off at night, and that since they will not front on the Lake or have dock privileges, they have no desire to be a part of what they consider to be a private Lake community. They believe that being part of the Lake community might for these reasons actually lower their property values.

Few additional taxes are proposed by the City, however, and taxes are clearly not the motivation for the annexation. If additional taxes were an adequate basis to deny annex-

---

**5.** The availability and need for city services is listed as factor 10 in *Norden*.

**6.** *See Norden,* 879 S.W.2d at 727 (availability of police services is 8th factor to consider); *Hard-*

*castle,* 765 S.W.2d at 328 (efficient police protection is factor favoring annexation).

**7.** Such reasons for annexation are factors (1)–(5) set out in *Norden*.

ation, few annexations would ever be approved. Moreover, the fact that the City does not need the land to be annexed for expansion, and the fact that the land to be annexed will not be along the Lake or afforded lakefront privileges, should not be dispositive where, as here, much of the City is not on the lakefront and the City has offered other valid bases why the annexation is reasonable and necessary.

In this case, the City offered two basic rationales for its desire to annex the area. First, the City notes, annexation would give the City zoning control over the area. The City says this is important to its development because the main City entrance is near the exit to Highway 291. A fireworks store and other development has already occurred at the exit, and the City wishes to zone to control future commercial development in the area in keeping with the current picturesque nature of the community.

Missouri law is clear that a desire to control the zoning of the area sought to be annexed does not in and of itself provide a sufficient basis to approve annexation. *See City of Odessa v. Carroll,* 512 S.W.2d 862, (Mo.App.1974). *Norden* also makes clear that concern for the beneficial affect of uniform zoning is *one* relevant factor which the court should consider in determining whether the reasonableness of the annexation is fairly debatable, however. 879 S.W.2d at 727.

In addition, Lake Winnebago argues that annexation would minimize the risk of future pollution of the Lake Winnebago watershed by bringing the subject property, and other unincorporated land within the Lake Winnebago watershed, under the City's control. This would enable the City to require the property to use sewer service rather than septic tanks, thus avoiding the danger of seepage of sewage into the Lake, and to control future development in a way which would not interfere with or injure the Lake and its watershed.[8]

Defendants suggested in argument and in their brief that even if all seven parcels mentioned in the Plan of Intent are annexed, some of the Lake's watershed would still be outside of the Lake Winnebago city limits, for some of the watershed area is also within the watershed of Raintree Lake and is already a part of Lee's Summit. *See* Diagram, *supra.* In addition, Defendants argue that by annexing Defendants' land the City would for the first time extend its city limits beyond the logical boundary formed by Highway 291. Thus, they say rather than making its borders more regular, annexation of Defendants' land would make the City's borders more irregular.[9]

First, we note that the exhibits filed in this case show that the northern few acres of the city limits of Lake Winnebago in fact do extend a short distance west of Highway 291. Indeed, the portion of the City which extends west of the highway runs along, and is contiguous to, Defendants' own property. By annexing Defendants' land, the City will thus simply be extending the width of the land it already owns west of the Highway. *See* Diagram, *supra.*

Second, and even more basically, we disagree with Defendants' argument that Highway 291 provides a logical barrier to further development of the City of Lake Winnebago. This conclusion is based on the fact that a central feature of the City of Lake Winnebago is, of course, Lake Winnebago itself. Because of this topographical feature of the City, one of its fundamental concerns is the health and cleanliness of the Lake.

In order to protect the Lake, the City is taking the steps it can to avoid undue pollution of the water within the area of the Lake's watershed. That watershed does not recognize artificial boundaries like highways; it extends beyond Highway 291. For this reason, Lake Winnebago also seeks to extend its city limits beyond Highway 291. In fur-

---

8. Factors 7 and 9 identified in *Norden* are the beneficial effect of uniform application of municipal ordinances pertaining to health or to building, plumbing or electrical codes. While Defendants deny that their septic tanks are now polluting the watershed, the City need not wait for such damage to occur.

9. By contrast, annexation of Parcels 6 and 7 will clearly regularize Lake Winnebago's boundary to the east. Those proposed annexations are not at issue here.

therance of this plan, it is slowly annexing the unincorporated land within the Lake's watershed which lies between it and the already existing city limits of Lee's Summit, including both Defendants' land (Parcel 2) and the land labeled Parcel 3 on the Diagram above. The City believes that this will enable it to replace septic tanks in the area with sewer service and to otherwise protect the watershed. This is a legitimate purpose supporting annexation.

It is true that due to Lee's Summit's prior incorporation of some of the land in the watershed area, Lake Winnebago can never fully control the Lake's watershed. That it cannot due so wholly does not mean that it is not reasonable for it to seek to do so to the extent that is possible, however. All it can do is try to annex the as-yet-unincorporated land contiguous to the City and in the Lake watershed. While this will not result in geometrically square borders, such borders are rendered impossible by the fact that the City closely borders Lee's Summit, whose city limits are themselves irregular. As a result, Lake Winnebago could never annex land in a way which would make its limits geometrically square.

On the other hand, the annexation of Parcel 2 will "regularize" Cass County's borders in the sense that it will eliminate Defendants' 15-acre island of unincorporated Cass County which is now entirely surrounded by Lake Winnebago and Lee's Summit. Annexation of Parcels 1, 3, 4, and 5 will accomplish a similar result in regard to the other unincorporated areas of Cass County lying between it and Lee's Summit. This will allow the City to better coordinate services and better protect its watershed and zoning, to the extent that this is still possible, and will avoid the difficulty of Cass County trying to extend services to unincorporated areas which have been partially or fully enveloped by various cities.

The trial court considered the evidence described above and determined that the annexation was authorized under the provisions of Section 71.015. We concur that the evidence made it at least fairly debatable that the annexation was reasonable and necessary. Accordingly, we affirm the trial court's judgment authorizing the annexation to proceed.

All concur.