**CITY OF ST. PETERS, MISSOURI,**
**Plaintiff/Respondent,**

v.

**Edwin KLEIN, et al.,**
**Defendants/Appellants.**

**No. 70450.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 30, 1997.

---

**2.** A fourth affidavit, the affidavit of defendant's father, was also presented. It attempted to address other issues.

James A. Borchers, St. Charles, for appellant.

Victor S. Williams, Edward C. Ahlheim, St. Charles, for respondent.

CRAHAN, Chief Judge.

Defendants, a class of inhabitants of certain areas proposed for involuntary annexation by the City of St. Peters ("City") pursuant to section 71.015 RSMo 1994,[1] appeal the judgment authorizing annexation of their property. Defendants urge that City failed to comply with various procedural requirements specified in the statute, that the proposed annexation is unreasonable in that it creates an unincorporated island or enclave and that City failed to establish that the proposed annexation is necessary to the proper development of City. We find that City failed to satisfy the procedural prerequi-

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

sites for annexation set forth in section 71.015 and reverse and remand with directions to dismiss City's Petition.

On March 8, 1990, City adopted Resolution 772 declaring the Board of Aldermen's intent to annex certain unincorporated territory adjacent to City in St. Charles County, Missouri. Although characterized by the City in its brief as a resolution to annex numerous discrete areas, the area described in Resolution 772 is actually one parcel of approximately 559 acres of land adjoining the southwestern portion of City.

On June 27, 1991, City adopted Ordinance 1771 authorizing annexation of 23 separately described areas encompassing approximately 2483 acres, including the 559 acres described in Resolution 772. Figure 1 below depicts the areas proposed for annexation.[2] As illustrated in Figure 1, City as it presently exists (shown in black) is quite irregularly shaped. Two features are of particular relevance to this appeal. First, there are presently a number of small unincorporated pockets of land completely surrounded by City. Some, but not all, of these unincorporated islands or enclaves were proposed to be annexed, as depicted in gray on Figure 1. Second, a narrow, irregularly shaped arm or tentacle extends to the southwest from the main body of City roughly along the path of Highway 94, a major thoroughfare and commercial area. Although divided and separately described in the ordinance as seven discrete areas, more than 2000 of the 2483 acres proposed for annexation comprise one contiguous area adjacent to the arm or tentacle extending to the southwest.

Ordinance 1771 further declared that City had prepared a Plan of Intent to be presented at a public hearing on July 25, 1991. The annexation authorized in Ordinance 1771 was further expressly conditioned on City's obtaining a favorable judgment authorizing annexation and approval of the voters of the area subject to annexation.

## Figure 1

■ Existing City

▨ Proposed Annexation

☐ Unincorporated

**Areas to be Annexed per Ordinance 1771**

2. Figures 1 and 2 were created by the author for illustrative purposes from exhibits filed with the court. They are not to scale and are intended to serve solely as illustrations of the concepts discussed in this opinion.

On July 25, 1991, City held a public hearing at which it formally presented its Plan of Intent which encompassed all 23 of the areas described in Ordinance 1771. Thirty-eight people spoke in opposition to the involuntary annexation and one spoke in favor.

On September 5, 1991, City adopted Ordinance 1804 authorizing annexation of some, but not all, of the areas described in Ordinance 1771. Figure 2 depicts the areas for which annexation was authorized by Ordinance 1804.[3] Specifically, Ordinance 1804 omitted approximately 1,122 acres of the more than 2,000 acre parcel adjacent to the southwestern portion of City, thus leaving a large island or enclave of unincorporated area which would be completely surrounded by City if the annexation described in Ordinance 1804 was approved. This area, which is entirely residential and contains over 2000 homes, was omitted due to opposition voiced at the July 25, 1991 public hearing.

Figure 2

■ Existing City

▨ Proposed Annexation

☐ Unincorporated

**Areas to be Annexed per Ordinance 1804**

Ordinance 1804 recites the previous adoption of Ordinance 1771, notice by certified mail to fee owners in the areas proposed for annexation, preparation of the Plan of Intent and conduct of the July 25, 1991 public hearing. Ordinance 1804 further provides that all of the tracts presented in the Plan of Intent (which included all of the areas specified in Ordinance 1771) are appropriate and necessary to allow for future expansion of City's boundaries. Ordinance 1804 then declares that the corporate boundaries be extended to include 17 specifically described areas, omitting six of the tracts described in Ordinance 1771 as described above. The Ordinance further authorized the City Attorney to file a petition for declaratory judgment seeking approval of the annexation and conditioned the proposed annexation on obtaining a favorable judgment and approval of the voters in the area subject to annexation.

3. See n. 2, *supra.* Ordinance 1804 recites that City had declared its intent to annex by resolution of the Board of Aldermen on March 8, 1990. The only resolution we find in the record, Resolution 772, pertains to just one of the 17 separate parcels described in Ordinance 1804. The remaining parcels may have been the subject of separate resolutions adopted on that date but they are not contained in the record before us.

On November 16, 1991, City filed its Petition for Declaratory Judgment seeking approval of its annexation of the 17 areas described in Ordinance 1804. On February 13, 1992, City adopted Ordinance 1845, amending Ordinance 1771 to delete the areas omitted in Ordinance 1804 and making minor adjustments to the boundaries of certain areas proposed for annexation in Ordinance 1804. These changes were reflected in

City's Second Amended Petition. City's Second Amended Petition purports to divide the annexation proposal into 17 "Counts," with each area separately described in Ordinances 1771 and 1804, as amended by Ordinance 1845, comprising a separate "Count." Each "Count" purports to state a claim against one or more individual defendants, each of whom is a resident and inhabitant of the area described in that "Count."

The hearing on the Second Amended Petition was held on November 28 and 29, 1995. On March 26, 1996, the trial court entered extensive findings of fact and conclusions of law. In its findings, the trial court recited the procedural history as recounted above[4] and found that as to each "Count" of the Petition, the individual and/or institutional defendants named represented the various classes of property sought to be annexed. The court further found that the lands described in each "Count" satisfied the contiguity requirements of section 71.015.1(1); that Ordinance 1771 satisfied the requirements of section 71.015.1(2); that City had developed a Plan of Intent satisfying the requirements of section 71.015.1(2)(c), (d) and (e); that City had satisfied the public hearing and notice requirements of section 71.015.1(2) and (3); and that the Petition complied in all respects with the requirements of section 71.015.1(5). Applying the standard of reasonableness set forth in *City of Centralia v. Norden*, 879 S.W.2d 724, 727 (Mo.App.1994), the court declared that annexation of all of the land described in each "Count" of the Petition was at least "fairly debatable" and that the court was therefore required to defer to the legislative determination as to the reasonableness of the annexation.

The trial court then made separate findings as to each "Count" of the Petition. For each "Count" the trial court set forth the legal description of the tract involved, declared that it satisfied the contiguity requirements of section 71.015.1(1), found annexation of the area to be reasonable and necessary to the proper development of City, found City had the ability to furnish normal municipal services within a reasonable time not to exceed three years following the effective date of the annexation, and found that the individuals and/or institutions named as defendants in that "Count" were representative of the various classes of property owners and residents of the described area. For each "Count" the trial court then ordered, adjudged and decreed that City was authorized to annex the land described in that "Count" and taxed all costs to City. On June 7, 1996, the trial court entered amended findings of fact and conclusions of law amending the judgment as to one "Count."

In their first, third and fifth Points Relied On, Defendants urge that City failed to comply with various procedural requirements of the statute. We will address these contentions in a somewhat different order than Defendants presented them.

In their fifth point, Defendants claim the trial court erred in allowing City to consolidate its seventeen "Counts" against different defendants representing separate and distinct geographic areas. We agree that the procedure employed by City and permitted by the trial court was irregular, but not for the reason asserted by Defendants. City may package several proposed areas of annexation into one proposal. *City of Bourbon v. Miller*, 420 S.W.2d 296, 302 (Mo. banc 1967). However, where a city proposes and authorizes annexation of separate areas in a single ordinance, it is considered one annexation and must stand or fall as such. *Id.* at 301–02. The trial court has no authority to approve annexation of one or more of the areas proposed and disapprove

---

4. We note, however, that the trial court erroneously found that Resolution 772 particularly described all of the lands described in each "Count" of the petition. As noted previously, our examination of Resolution 772 reads that it only describes one of the 17 areas included in the petition.

annexation of others. *Id.* It follows that there is no authority which will permit City to divide the areas it has treated as a single proposed annexation into separate "Counts." Only one proposal and one ordinance was before the court and it had authority to enter but one judgment. *Id.* If annexation of any area included in the proposal were to be found unreasonable, the petition must be dismissed. *Id.* at 303.

The statute contemplates that, following adoption of the ordinance, a declaratory judgment action be commenced against a single class of inhabitants of the entire unincorporated area proposed for annexation, not separate classes of inhabitants of each individual area proposed. *See* section 71.015.1(5)(c). What is unclear is whether the irregular procedure employed by City resulted in any actual prejudice to Defendants in this case. The trial court did specifically find the named Defendants in each "Count" to be representative of the various classes of property owners and residents inhabiting the land describe therein. Thus, collectively, Defendants would appear to be proper representatives of a single suitable class as contemplated in the statute. On the other hand, dividing the single action into separate "Counts" with separate classes may have contributed to the trial court's failure to evaluate the proposed annexation as a whole. The most troublesome feature of the proposed annexation, the creation of a large densely populated, unincorporated island or enclave which would be surrounded by City, is not mentioned in the court's findings. Nor is that feature of the proposal apparent when the component parts of the proposal are evaluated individually. In any event, we need not decide whether these procedural irregularities would justify reversal and remand in this case because we conclude that other procedural defects, properly raised and preserved by Defendants, compel outright reversal and dismissal of the Petition.

The annexation procedure specified in section 71.015, known as the Sawyers Act, has been described as follows:

First, the city must propose an ordinance stating, among other things, that the city has developed a "Plan of Intent" to provide the annexed area with services. [Section] 71.015.1(2)(c) RSMo.1986 Supp.1992. The Plan must contain a list of major services presently provided by the city. [Section] 71.015.1(4)(a). The statute lists as examples police and fire protection, water and sewer systems, street maintenance, parks and recreation, and refuse collection. *Id.* The Plan of Intent must also include a proposed time schedule to provide those services to the annexed area. It must also state the level at which the city assesses property and the property tax rate, and must set out the proposed zoning classification of the annexed area. [Section] 71.015.1(4)(b)-(d). Finally, the Plan must state when the annexation will become effective. [Section] 71.015.1(4)(e).

The procedure outlined in the statute does not require a city to formally adopt the Plan of Intent. Instead, the city must present the Plan and evidence in support of it at the public hearing on the ordinance. [Section] 71.015.1(3), (4). If, after the hearing on the ordinance, the governing body votes to annex, the city must file an action seeking a declaratory judgment authorizing annexation. [Section] 71.015.1(5).

*City of Lake Winnebago v. Gosewisch,* 932 S.W.2d 840, 843–44 (Mo.App.1996).

 In their first and third points, Defendants urge that City failed to comply with these requirements. Specifically, Defendants urge that if Ordinance 1771 is the annexing ordinance for which City seeks approval, it is invalid because it was adopted *before* the public hearing whereas the statute provides that the public hearing be held prior to the adoption of the ordinance. Section 71.015.1(2)(d). On the other hand, if Ordinance 1804 is the annexation ordinance for which City is seeking approval, it is invalid because, *inter alia,* it proposes annexation of a very different area which has never been the subject of notice or a public hearing and was not the area described in City's Plan of Intent. We agree.

The proposal contained in Ordinance 1804 is fundamentally different from that contained in Ordinance 1771. Ordinance 1804 (and Ordinance 1771 as amended by Ordinance 1845 well after the public hearing and

institution of City's declaratory judgment action) would create a 1000+ acre, densely populated, unincorporated island or enclave containing more than 2000 homes that would be completely surrounded by City if the proposal were approved by the voters. City never "propose[d] an ordinance" which would have established such an island or enclave, nor has such a proposal ever been the subject of a public hearing or, for that matter, a Plan of Intent. *See* section 71.015.1(2), (3) and (4).

■ City claims it satisfied the prerequisites of section 71.015.1 when it "reaffirmed" Ordinance 1771 in Ordinances 1804 and 1845. Neither of the latter ordinances can be construed as reaffirming Ordinance 1771. Ordinance 1804 purports to annex just over half of the areas described in Ordinance 1771, resulting in the large, unincorporated island or enclave described above. Ordinance 1845, which was not adopted until after the declaratory judgment action was filed, amends Ordinance 1771 by deleting certain areas, which is what produces the enclave. None of the ordinances, considered separately or together, satisfy the requirements of section 71.015.1.

■ City next maintains that even if there were procedural irregularities, Defendants were not prejudiced because the changes embodied in Ordinances 1804 and 1845 merely decreased the size of the areas to be annexed and the remaining areas were all included in the notice and Plan of Intent and were the subject of the public hearing. We disagree. City relies on *Lake Winnebago, supra,* and *City of St. Peters v. Shop N' Save Warehouse Foods,* 710 S.W.2d 409, 414 (Mo.App.1986). In *Lake Winnebago,* the court held that a city did not have to hold a new public hearing after it amended its Plan of Intent to add new services it would provide to the areas it proposed to annex. 932 S.W.2d at 844–45. The court pointed out that there is no requirement that the court approve the Plan of Intent; rather, the court must approve the ordinance, which was not changed. *Id.* Further, the court found no prejudice because the amended plan simply provided additional information the appellants had claimed should have been included in the original

plan. *Id. City of St. Peters* simply holds that landowners who received actual notice could not claim prejudice by reason of an alleged failure to comply with the statutory notice requirement.

There is authority that amendment of an ordinance after the hearing to delete areas originally proposed for annexation does not require a second public hearing absent a showing of prejudice. *City of Lebanon v. Richardson,* 894 S.W.2d 699 (Mo.App.1995). In *Richardson,* the city amended its annexation to delete two tracts after the hearing had been held and the declaratory judgment had been filed. *Id.* at 702. On appeal, the appellant claimed that the city should have been required to hold a second public hearing. *Id.* Noting that the appellant was an intervenor in the suit and not one of the named class representatives, the court held that appellant had failed to make any showing of any prejudice to its individual interest and, because it was not acting in a representative capacity, was not entitled to claim prejudice to others' interests. *Id.* The court further found that there was no evidence the deletion of the two tracts would affect the reasonableness or necessity of the annexation. *Id.* Under those circumstances, the court affirmed the trial court's judgment authorizing annexation. *Id.*

*Richardson* is distinguishable from the instant case in two important respects. First, Appellants in this case are acting in a representative capacity. Second, and more importantly, there is evidence that City's deletion of nearly half of the areas proposed for annexation affected the reasonableness of the proposed annexation. As discussed above, deletion of these areas meant that City was proposing to completely encircle a large, fully developed residential area containing more than 2000 homes. The creation of such islands or enclaves has been repeatedly condemned in the strongest possible terms. *See, e.g., City of Pacific v. Metro Development Corp.,* 922 S.W.2d 59, 64, 65 (Mo.App. 1996) (characterizing unincorporated island as an "'archipelagic monstrosity,' intolerable in all but the most compelling circumstances" which results in "unthinkable fragmentation and municipal chaos." [*quoting* in part *City of*

*Kingsport v. State ex rel. Crown Enterprises,* 562 S.W.2d 808, 814 (Tenn. 1978)]); *Martee v. City of Kennett,* 784 S.W.2d 621, 625 (Mo. App.1990). We find no indication that deletion of the two tracts in *Richardson* resulted in an unincorporated island or enclave. We hold that City's deletion of nearly half of the area originally proposed for annexation, resulting in an unincorporated island that would be completely surrounded by City if approved, was such a substantial revision to the annexation as proposed that City was required to start all over with a new proposed ordinance, public hearing and Plan of Intent directed specifically to the revised proposal.

█ As residents of the areas proposed for incorporation, Defendants have standing to complain of the potential fragmentation and chaos that could result if the proposal were approved. Accordingly, we reverse the judgment of the trial court and remand with directions to dismiss City's Petition. In view of our disposition, Defendants' remaining contentions and those of separate Appellant Eunice Krause are denied as moot.

GRIMM and HOFF, JJ., concur.